WILLIAM H. LAIRD and others *vs.* PATRICK MOONAN and another.

July 29, 1884.

**Mechanic's Lien — Lien of Subcontractor—Constitutionality of Statute.**—The provisions of Gen. St. 1878, c. 90, securing a lien to subcontractors and others for labor performed or materials furnished in the erection of buildings pursuant to a contract between the owner and contractor, are valid and constitutional.

**Same—Subcontractor's Lien, how Enforced.**—Such lien may be enforced, irrespective of the state of accounts between the contractor and owner, or the amount due upon such contract.

**Same — Amount — Reasonable Value of Labor, etc.**—In such cases the lien is limited to the reasonable value of the labor or materials furnished.

Appeal by defendants from an order of. the district court for Waseca county, *Buckham*, J., presiding, overruling their demurrer to the complaint. The action was to enforce a mechanic's lien, under Gen. St. 1878, c. 90, § 2, for materials furnished by plaintiffs to one Berndt for use and used by him in a building he was erecting on land of defendant Moonan, under a contract with that defendant.

*Collester Bros.*, for appellants.

Section 2 is unconstitutional, as in effect forfeiting the owner's property, unless he pays, in some cases, to persons with whom he never contracted, a sum in excess of the price for which he contracted with another to build his house, and though he may have paid that other the full contract price, or the full value of the building. Though an owner contract for a building to be paid for in advance, and pays accordingly, he is yet required to pay for it again. This is beyond the power of the legislature. *Stewart* v. *Wright*, 52 Iowa, 335.

Lien laws that have been held constitutional are such as limit the liability of the owner to the contract price. Such is that of New York, considered in *Blauwelt* v. *Woodworth*, 31 N. Y. 285, cited in *Bohn* v. *McCarthy*, 29 Minn. 23; and such are the lien laws of California, Iowa and other states. To be constitutional, a mechanic's lien law must at least limit the owner's liability to the contract price, or there must be such provisions as to notice that the owner may protect himself otherwise than by the indemnity bond provided in section 3. *Glacius* v. *Black*, 67 N. Y. 563. But section 2 gives the subcontractor or laborer a lien "for the value or contract price of such labor or materials." An owner may contract for a house at $1,000, —all it is worth. The contractor may have the house built by another, agreeing to pay $2,000, and the owner must pay this price or lose his property—and this though he may have agreed to pay, and paid, his contractor in advance. And in all cases the owner must pay the subcontractor in full, regardless of any equities between himself and the principal contractor, or any defences to the latter's claims.

Section 3, which provides for exacting a bond by the owner from the contractor, etc., so far from relieving the owner, imposes a condition harsh, unreasonable and sometimes impossible, and would sometimes work embarrassment and even damage, by compelling an owner to employ an unskilful builder who could give a bond, instead of a skilful one who could not, or by preventing him from contracting with his debtor for building a house in payment of the debt. This is an unwarrantable infringement of the owner's freedom to contract.

*Lewis & Leslie*, for respondents.

VANDERBURGH, J. The constitutional validity of the provisions of the mechanic's lien law, (Gen. St. 1878, c. 90,) for securing a lien to subcontractors and others furnishing materials or doing work for a contractor or builder in cases arising subsequent to its passage, was recognized by this court in *O'Neil* v. *St. Olaf's School,* 26 Minn. 329, and in *Bohn* v. *McCarthy,* 29 Minn. 23. As such liens are incumbrances upon the owner's title, they can only be created by his consent or authority; and it is upon this ground that such legislation is supported. The statute annexes the lien as an incident to the contract of the owner with the contractor or builder, and such contract is the evidence of the authority of the latter to charge the building and land with liabilities incurred by him in performing his contract. In *O'Neil* v. *St. Olaf's School,* this court say: "The owner consents to this power conclusively and irrevocably, so far as others than the builder are concerned, by making a contract while such is the law." *Donahy* v. *Clapp,* 12 Cush. 440; Phil. Mech. Liens, § 65.

Previous to the statute of 1878, a subcontractor was obliged to protect himself by seeking his indemnity through the amount due from the owner to the builder, by serving notice on him of his account and the amount of his claim. His right to recover was thus made subordinate to the contract with the builder, and the owner was only liable to a subcontractor for the amount remaining due to the original contractor at the time of the service of such notice. The purpose of the amendment of 1878, reducing the statute to its present form, was evidently to extend and more fully protect the rights of subcontractors, laborers, and material-men, and thereby the land, and not the amount due the contractor, becomes the pledge or security for the payment of their claims. As respects the amount which may thus be secured, their rights are not dependent upon or limited by the amount due the contractor from the owner under the original contract, nor by the state of the accounts between them. It is sufficient that the liens are created through the owner's contract, from which his consent is implied. To avoid the incumbrance of such liens the owner takes the burden (under section 3 of the act) of securing the bond therein provided. Whether the burden of taking such proceedings for his own protection should thus be cast on him, or whether sub-

contractors and laborers should be left to proceed against the amount due, as under the former practice, was entirely a question of legislative policy.

And this is sufficient to dispose of the objection that the law unreasonably limits the exercise of the owner's discretion as to the persons whom he shall contract with; that is to say, to such as can give bonds or are financially responsible for the contracts they may make in the prosecution of the work. It is strictly in conformity with the policy which allows a lien in any case. It does not take away or affect the rights of the owner any further than it may be necessary for the security of those who are presumed to have added something to the owner's property equal to the expense incurred. *Spofford* v. *True*, 33 Me. 283; *Taggard* v. *Buckmore*, 42 Me. 77. It is ordinarily understood, from the nature of the case, that under building contracts the work is not to be done wholly by the contractor; and it is a sound and just principle that all those who have, by consent of the owner, or in pursuance of contracts with him for that purpose, contributed to increase the value of his property, should have an interest in it until their respective claims for such services have been discharged. *Parker* v. *Bell*, 7 Gray, 429.

The same reasons will in great measure apply to a further objection which is urged by appellant, that, under the provisions of section 2, the liability of the owner is not limited to the contract price. It is therein provided that every mechanic or other person, whether journeyman, subcontractor, or laborer, doing or performing any work or furnishing materials for the erection of any building, etc., shall have a lien, etc., "for the value or contract price of such labor and materials," upon such building, and the land upon which the same is situated, not exceeding the amount designated in that section. But if, in pursuance of section 3, the contractor will enter into a bond with the owner, for the use of all persons who may do work or furnish materials pursuant to his contract with such owner, conditioned for the payment of all just claims for such work or materials as they become due, (which bond is to be in such amount, not less than the price agreed to be paid for the performance of the contract, and with such sureties as shall be approved by the district judge, etc.,)

and if such bond is duly filed with the register of deeds, and a notice is kept posted as required by that section, then no lien shall attach in favor of the persons mentioned in section 2. Under the language of this section, the contract price is the minimum security which the magistrate is permitted to approve, and he may, and should, whenever in his judgment the case requires it, exact more. *Loveland* v. *Burnham*, 1 Barb. Ch. 65 ; *Leavitt* v. *Dabney*, 40 How. Pr. 277. From the language of these sections, the intention of the legislature is not doubtful. It meant to give a lien, to the class of persons named therein, for the value of their labor or materials furnished under and in performance of the builder's contract, except on the condition that the statutory bond should be provided for their security. It necessarily follows that, unless such bond is filed, the owner must adjust the terms of his contract, and the mode of payments thereunder, at the risk of additional payments to the lienholders. *Doe* v. *Monson*, 33 Me. 430; *Hunter* v. *Truckee Lodge*, 14 Nev. 24, 41; *Lonkey* v. *Cook*, 15 Nev. 58; Phillips, Mech. Liens, § 57; *Colter* v. *Frese*, 45 Ind. 96; *Sodini* v. *Winter*, 32 Md. 130; *White* v. *Miller*, 18 Pa. St. 52; *Sheppard* v. *Steele*, 43 N. Y. 52.

In *Atwood* v. *Williams*, 40 Me. 409, the laborer's lien was enforced, though the contractor had been previously paid. That the legislature may impose such a condition and liability upon the land-owner is hardly a debatable question. It is no greater hardship than that subcontractors and laborers should be obliged to protect themselves against irresponsible contractors and employers by requiring security as a condition of rendering service or furnishing material. Speaking on this subject, in *White* v. *Miller*, *supra*, the court say: "As soon as owners of lots cease to be their own builders, they put it in the power of persons employed by them to occasion losses to mechanics and material-men which they ought not to bear, and it was to remedy this mischief that the legislature established the principle that materials and labor are to be considered as having been furnished on the credit of the building, and not of the contractor. The principle is not only a just but convenient one."

It is clear, we think, that full effect could not be given to the legislative intention if the lienholder's interest was necessarily limited to

the amount due upon the owner's contract. If the amount has been unduly reduced by payments to the contractor, it is the owner's own fault. If the original contract price was too low, because of the improvidence or mistake of the contractor, still it is certainly equitable and just that owners of real estate should not be permitted to secure to themselves without compensation, through low contracts or irresponsible contractors, the benefits of the labor and materials of others. *Colter* v. *Frese*, 45 Ind. 96, 103. While the contract remains unperformed which a contractor is bound to fulfil, it continues under the statute to be his authority to procure others to furnish materials and to do work necessary to complete the same in compliance with its terms, and to subject the premises to a lien for the reasonable contract price or value thereof, though the consideration agreed to be paid the contractor be inadequate to cover such expense or have been previously paid.

That the owner's contract is made under and subject to the provisions of the existing lien law; that by virtue of the statute it operates as an irrevocable authority to the contractor to charge the land with liens for labor and materials employed in its improvement; that adequate provision is made for entire exemption therefrom by complying with the provisions of section 3 of the act,—together constitute a complete answer to all objections to the validity and justice of the lien law of 1878.

It is evident that it was intended to provide a lien in favor of persons, and such only, "who do work or furnish materials pursuant to the contract." Section 3; *O'Neil* v. *St. Olaf's School, supra.* It would seem, therefore, that the same should be reasonably adapted to or suitable for the character of the building or improvement contracted for by the owner. *Odd Fellows* v. *Masser*, 24 Pa. St. 507; *Harlan* v. *Rand*, 27 Pa. St. 511; Phillips, Mech. Liens, § 161.

In considering the land-owner's rights and liabilities under the lien law, it is also material to determine whether, as against him, the subcontractor or material-man can enforce a lien for more than the fair market value or reasonable contract price, which would be a standard of such value, for work or materials entering into a building. As between the immediate parties to a contract, the contract price fixed

therein is, of course, the measure of liability; but it could not have been intended that the owner's contract carried with it an implied consent that the contractor should bind him to pay whatever he might promise for labor or materials, or any more than the reasonable price or value. The terms "contract price or value," used in sections 2 and 5, must be so limited in construing the statute. And this becomes the more apparent in view of the provisions of section 6, requiring persons claiming a lien under section 2 to make an account in writing of the items of labor and materials furnished, and *the value* thereof, which account so made and filed as therein provided shall constitute a lien, etc. It is true, written contracts are also to be filed, but the value set forth in the account is the limit of the lien both against the owner and subsequent incumbrancers. It is to this end, we apprehend, that section 6 requires the items of materials and labor to be set forth in the account, that the owner may be informed of the particulars of the claim against his property, and it is manifest that the same is open to investigation by him, notwithstanding the terms of any subcontract. *Russell* v. *Bell*, 44 Pa. St. 47; *Lee* v. *Burke*, 66 Pa. St. 336; *Gray* v. *Dick*, 97 Pa. St. 142.

Order affirmed.