CHARLES S. BARDWELL and others *vs.* W. A. MANN and others.

HERBERT B. GARDNER *vs.* ARTHUR LECK and others.

June 8, 1891.

Constitution—Mechanic's Lien Law.—The lien law of 1889 (Laws 1889, c. 200) *held* constitutional.

Mechanics' Liens—Application of Laws 1889, c. 200.—Where all the material or labor for a building had been furnished or performed before the law took effect, (October 1st,) the provisions of the old law relating to lien statements applied, although such statements were not filed until after that date; but where part of the material or labor was furnished or performed before, and part after, October 1st, the provisions of the new law applied; *following former decisions.*

In each of these cases the plaintiff appeals from an order of the district court for Hennepin county, *Young,* J., presiding, sustaining a demurrer to the complaint.

*Roberts & Baxter,* for appellants in first case.

*George H. White,* for appellant in second case.

*Daniel Fish,* for respondents in both cases.

MITCHELL, J. These actions, which were argued together, were brought to enforce liens on real estate for materials furnished for the construction of buildings thereon. In the first case the plaintiffs, at divers times between and including May 6 and September 12, 1889, furnished the material to the defendant Mann, contractor with Freeman, the owner of the premises. The lien statement was filed December 9, 1889. In the second case the material was furnished directly to defendant Leck, the owner of the premises, at divers dates between and including September 2, 1889, and March 14, 1890. Leck executed to defendant Drexel a mortgage on the premises, September 10, 1889. Plaintiff filed his lien statement May 15, 1890. In both cases the "lien statements" would be sufficient, under the lien law of 1889, (Laws 1889, c. 200,) which took effect October 1st of that year, but are clearly and confessedly insufficient under the prior law, (Gen. St. 1878, c. 90.)

It would seem to be settled by the decisions in *Nelson* v. *Sykes*, 44 Minn. 68, (46 N. W. Rep. 207,) and *Tell* v. *Woodruff*, 45 Minn. 10, (47 N. W. Rep. 262,) that, where the labor was all performed or the material all furnished before the act of 1889 took effect, the provisions of the old law relating to lien statements applied, although the statement was not filed until afterwards; but that where part of the labor or material was performed or furnished before the new law took effect, and part afterwards, the lien statement, as to the whole, should conform to the requirements of the new law,—at least where they were performed and furnished under an entire contract entered into while the old law was still in force, and consequently the right to file a lien claim had not accrued when the new law took effect. We can see no other construction that can be put on these two decisions, and, without considering whether they are consistent with each other in principle, or whether all that is decided by or said in them is correct, they must now be adhered to, having become, in a sense, rules of property. If the material in the second case was merely furnished from time to time, upon an open current account, and not upon a single entire contract entered into before October 1st, (a fact which does not clearly appear from the complaint,) a lien statement in accordance with the new·law would be good, in any view of the case, at least as to all items furnished subsequently to October 1st. Although we have sometimes spoken, perhaps without strict accuracy, of the *filing* of the lien statement as *creating* the lien, yet it is merely the means of preserving and perfecting it. It is the performance of the work or the furnishing of the material which, under the statute, gives the right to a lien; and the provisions of the law as to filing the statement are merely remedial in their nature, a change in which works no alteration in the owner's contract, and gives no right to a lien where one did not exist before, but merely provides a somewhat different form of procedure for its preservation and enforcement. This being merely in the nature of a change of remedy, it is entirely competent for the legislature to make it applicable to existing contracts. It follows that in the first case the demurrer to the complaint was properly sustained, but that in the second the demurrer should have been overruled, unless the act of 1889 is, as respondents claim, unconstitu-

tional, in which case the old statute would still be in force. This presents the main question in the case.

Counsel for respondents very vigorously assails the validity of this law on the ground that, under it, the character, quantity, or value of the labor or material which may be charged upon the property is in no way limited by the contract between the owner and the original contractor; that laborers, material-men, and subcontractors are not required to pay any attention whatever to the terms of the contract with the owner; that their liens may, in the aggregate, far exceed the contract price; that it takes out of the owner's hands the power to say who shall be his agents, with authority to charge his property, and gives that authority to subcontractors whom he has never employed, and leaves him without protection against the dishonesty, incompetency, or misfortune of his immediate contractor, who is endowed, under the law, with absolute authority to incumber the property to any one who contributes any labor or material to its improvement. If this argument were addressed to the legislature, some of it would have considerable force, for it may well be doubted whether the interests of the owner are as fully and fairly protected by the provisions of the act as they equitably ought to be. But, in our opinion, part of counsel's criticisms of the law are based upon an incorrect construction of its provisions, whi e the remainder might with equal force have been made against the lien law of 1878, and were fully covered by what was said in *Laird* v. *Moonan*, 32 Minn. 358, (20 N. W. Rep. 354,) when a similar attack was made upon that law. The gist of the argument against the validity of both laws was and is that they charge property with liens in favor of subcontractors, laborers, and material-men whom the owner has never employed, and with whom he has never contracted, and whose liens are not dependent upon the state of the account between him and his immediate contractor, and may, in the aggregate, far exceed the amount of the contract price agreed on. The question is not a new one, but has been frequently raised and met in the case of lien laws of various states which contain the same general features. And while the policy of such laws has been often questioned, yet, so far as we have discovered, they have always been upheld as valid,

and upon the same ground taken in *Laird* v. *Moonan, supra,* viz., that while no man can be deprived of his property without his consent, and while the basis of the right to a lien against property is the consent of the owner, yet the contract of the owner with the contractor, made under and subject to the provisions of an existing lien law, is evidence of the authority of the latter to charge the property with liabilities incurred by him in performing his contract, and operates, by virtue of the statute, as authority to him to do so. The principle was well stated by Shaw, C. J., in *Donahy* v. *Clapp,* 12 Cush. 440, as follows: "Such a contract, by force of the existing law when it was made, of which the owner is presumed to be conusant, gives his irrevocable power to his contractor to charge and bind his estate; and, when such power is executed by the actual making of such subcontract for labor, it is, in law, the act of the owner, hypothecating his own estate to the extent of the price of such labor." The act of 1889 gives the right to a lien to those who furnish material to, or perform labor for, the subcontractor. But while the policy of such a law may be more subject to criticism than one which limits the power to charge the property to the original contractor directly, yet the principle upon which the one is upheld is equally applicable to the other. A comparison of the act of 1878 with that of 1889 will show that the two are not essentially different from each other in the particular now under consideration, and that the latter, equally with the former, bases the right to a lien upon the assent of the owner as evidenced by his contract entered into, either personally or through his agent, with the original contractor. The only important difference between the two acts is that the act of 1889 does not contain the provisions found in section 3 of the old act, by which the owner might have relieved his property from the attaching of liens by requiring his contractor to give a bond to pay all claims for work and material. It is assumed by counsel for respondent that in *Laird* v. *Moonan, supra,* the validity of the old law was upheld merely because of this provision. It is true that some stress was laid upon that feature of the law, and it was referred to, to show that the act would not work inequitably or harshly; but we do not see how it is of any materiality as affecting the valid-

ity of the statute. If the provisions of the law would otherwise have been unconstitutional, it is difficult to see how they would be rendered valid by the mere fact that the owner could relieve himself from them by requiring his contractor to give a bond. The foundation principle upon which such statutes have been upheld in this and other jurisdictions is the consent and authority of the owner to charge his property, evidenced by his own contract, made under and with reference to the provisions of the existing lien law.

There is no ground for the contention that, under the act of 1889, subcontractors and material-men are not required to pay any attention to the terms of the contract with the owner, and that the character and quantity of the material which may be charged upon the property is in no way limited or controlled by that contract; for instance, that, where the owner contracts for the construction of a wooden dwelling-house, his land might be charged with the cost of constructing a brick stable. Statutes are to receive a reasonable construction. What the law evidently contemplates is to give a lien for labor and material furnished for the construction of the building which the owner has contracted for; and while it is no doubt true that laborers and material-men are not limited in the amount of their liens to the contract price or to the amount due the original contractor, yet, inasmuch as it is the principal contract with the owner which communicates authority to bind his property, it is not unreasonable to require subcontractors, material-men, and others to look to the terms of that contract, to ascertain whether it is such as to justify them in becoming subcontractors, or in furnishing material under it. This view was intimated in *Laird* v. *Moonan,* where it is remarked that the work and material "should be reasonably adapted to or suitable for the character of the building or improvement contracted for by the owner." It may also be suggested that, in the matter of price or cost of labor and material, the new law more carefully guards the interests of the owner than did the old; for it contains, in express terms, a provision, which we read' into the old law by implication, that when the labor or material is furnished by any one other than the original contractor, the lien should not exceed the actual value of the labor or material.

It is also argued that the provisions of the act are so crude and imperfect as to be incapable of being carried into execution. The machinery provided for carrying the law into effect is perhaps not very complete, and difficulties may arise under it that we do not now foresee; but counsel have suggested none but what we think the courts, with their extensive and somewhat elastic powers in matters of practice in cases of an equitable nature, may so far overcome as to be able to carry the law into effect according to the legislative will.

In the case of Bardwell & Co. v. Mann *et al.* the order appealed from is affirmed, and in the case of Gardner v. Leck *et al.* the order appealed from is reversed.