[No. 14793. Department Two. January 9, 1919.]

WESTERN HARDWARE & METAL COMPANY, *Respondent,* v. MARYLAND CASUALTY COMPANY, *Appellant.*[1]

MUNICIPAL CORPORATIONS (158) — SCHOOLS AND SCHOOL DISTRICTS (28)—CONTRACTOR'S BONDS — PERSONS SECURED — SUPPLIES. A bond given by a contractor in compliance with Rem. Code, § 1159, to secure all persons furnishing provisions and supplies for carrying on the work of constructing a heating plant in a schoolhouse, covers sums due for sheet metal furnished in good faith to a subcontractor to be used in the building, although, due to the fault of the subcontractor, all of it was not used in the construction of the plant.

SAME—LIABILITY. Liability attaches in such case, although the sheet metal was not delivered at or near the school building, where the delivery was made at the shop of the subcontractor, it being necessary to there prepare it for use on the job, and the work of preparing it was being actually done there.

Appeal from a judgment of the superior court for King county, Smith, J., entered March 5, 1918, upon findings in favor of the plaintiff, in an action on a contractor's bond, tried to the court. Affirmed.

*Grinstead & Laube,* for appellant.

*F. C. Kapp,* for respondent.

[1]Reported in 177 Pac. 703; 181 Pac. 700.

PARKER, J.—The plaintiff, Western Hardware & Metal Company, seeks recovery upon a bond executed by the defendant, Maryland Casualty Company, as surety, under Rem. Code, § 1159, relating to security for the furnishing of labor, material and supplies for the carrying on of public work. Trial in the superior court for King county, sitting without a jury, resulted in findings and judgment in favor of the plaintiff, from which the defendant has appealed to this court.

The controlling facts may be summarized as follows: On May 15, 1916, Musgrove & Blake, copartners, entered into a contract with Seattle School District No. 1, by which they agreed to furnish the material for, and install, a heating and ventilating plant in the West Queen Anne schoolhouse, for the sum of $12,758. On May 20, 1916, Musgrove & Blake, as principals, and appellant casualty company, as surety, executed a bond in the sum of $19,137 to secure the faithful performance of the contract, and also conditioned, as provided by Rem. Code, § 1159, that Musgrove & Blake:

"Shall pay all laborers, mechanics, and subcontractors and materialmen, and all persons who shall supply such person or persons or subcontractors with provisions and supplies for the carrying on of such work. . . ."

On May 29, 1916, Musgrove & Blake sublet the furnishing and installing of the sheet metal work of the heating plant to Joe Zimmerer, doing business as Zimmerer Manufacturing Company, whereby he agreed to furnish the material for, and install, all the sheet metal work of the plant for the sum of $2,167; Zimmerer then being the owner of and conducting a sheet metal shop in Seattle wherein he pressed and worked sheet metal into such form as was necessary for whatever jobs he might have had on

hand. On June 2, 1916, Zimmerer, not having sheet metal on hand for the performance of his subcontract, purchased from respondent, Western Hardware & Metal Company, of Seattle, dealers in heavy hardware of that nature, sheet metal of the value of $766.93, for the purpose of performing his subcontract, with the distinct understanding on the part of both himself and the respondent that the sheet metal so furnished was for his subcontract and was to go into, and become a part of, the heating and ventilating plant. Soon thereafter the whole of the sheet metal so purchased by Zimmerer of respondent was delivered by respondent to him at his shop. Thereafter, on June 5, 1916, respondent notified Musgrove & Blake that it had so furnished and delivered to Zimmerer material for the performance of his subcontract, and that they and their surety would be held for the payment of the purchase price therefor, and also advising them of the amount of the purchase price. This notice was given strictly in compliance with the provisions of § 1159-1 of Rem. Code, respondent manifestly having in view the possible necessity of a suit upon the bond to recover the purchase price of the material so furnished. The material was delivered by respondent to Zimmerer at his shop, because it was there that Zimmerer was going to press the sheet metal into form for use in the construction of the heating plant. It was material well adapted to that purpose, and we think the evidence plainly warrants the conclusion that it would necessarily have to be pressed into proper form for use in the structure at some shop having proper tools and appliances therefor, rather than upon the premises where it was to be finally put in place. It is plain, we think, that Musgrove & Blake knew that Zimmerer was going to do the pressing and shap-

ing of the material in his shop, and that he was doing so with the express knowledge and consent of Musgrove & Blake. Only about $140 worth of the material so furnished and delivered actually went into and became a part of the structure. To this extent appellant casualty company conceded that respondent was entitled to recover upon the bond, and made tender of that amount accordingly. Before completing his subcontract, Zimmerer went into bankruptcy and failed to complete it. What became of the portion of the metal so furnished by respondent which did not go into the plant does not appear with certainty, though the evidence points to the conclusion that Zimmerer disposed of it elsewhere. It is plain that respondent was in nowise responsible for the failure of Zimmerer to place all of the sheet metal in the plant. On March 7, 1917, the contract being completed by Musgrove & Blake with other sheet metal so far as was necessary, the plant was accepted by the school district. On March 13, 1917, respondent, not having been paid for the material so furnished by it to Zimmerer, filed its claim therefor against the bond with the proper officers of the school district. This was done timely and in strict compliance with Rem. Code, § 1161, with a view to enforcing the claim of respondent against the bond and appellant as surety thereon. Soon thereafter this action was commenced, resulting in judgment rendered therein as above noticed.

It is contended in appellant's behalf that it is not liable upon its bond for the purchase price of that portion of the sheet metal furnished by respondent which was not actually used in the construction of the heating and ventilating plant. Counsel for appellant invoke the law announced in some of the lien decisions, holding that actual use of material in the construction

of a building is indispensable to the creation of a lien right in the one furnishing it. We have recognized that there is generally an analogy between mechanics' and materialmen's lien statutes and bonding statutes such as ours, since the latter are generally for the purpose of providing security for labor and material in lieu of security therefor by lien upon property which would be subject to lien under private ownership. This analogy, in so far as a claimant's rights as against the property or the bond are concerned, would seem to be complete when both the lien and bonding statutes define the work and material the payment for which is secured by the lien or the bond, in substance the same. *Clough v. Spokane,* 7 Wash. 279, 34 Pac. 934; *National Surety Co. v. Bratnober Lumber Co.,* 67 Wash. 601, 122 Pac. 337. Our mechanics' and materialmen's lien statute, in so far as it specifies the furnishing of material for which a lien may be asserted by the one furnishing it, reads:

"Every person . . . furnishing material to be used in the construction . . . of any . . . building . . . has a lien upon the same for the . . . material furnished by each, respectively, . . . and every contractor, subcontractor, architect, builder or person having charge, of the construction, alteration or repair of any property subject to the lien as aforesaid, shall be held to be the agent of the owner for the purposes of the establishment of the lien created by this chapter." Rem. Code, § 1129.

Our bonding statute, in so far as it relates to the securing of payment for material, provisions and supplies for the carrying on of public work, provides that such bond shall be conditioned that the contractor shall:

". . . pay all laborers, mechanics and subcontractors and materialmen, and all persons who shall supply such person or persons, or subcontractors, with

provisions and supplies for the carrying on of such work, . . ." Rem. Code, § 1159.

It would seem, therefore, that, since our lien statute secures by lien payment for "furnishing material *to be used in the construction,*" etc., and our bonding statute provides for the securing by bond the payment of "subcontractors and materialmen and all persons who shall supply such person or persons, or subcontractors, with provisions and supplies for *the carrying on of such work,*" there is an analogy between these statutes, in so far as we are here concerned with the question of the necessity of the material furnished by respondent going into the structure of the plant in order to give respondent the right of recovery upon the bond. We are not here concerned with provisions and supplies which are not intended to go into the structure but which are consumed in carrying on the work, the payment for which our bond statute contemplates securing by the bond, but which our lien statute does not secure. These observations, we think, render it plain that the mechanics' and materialmen's lien decisions are as applicable and helpful in our present inquiry as bond decisions.

In the early decision of this court in *Huttig Bros. Mfg. Co. v. Denny Hotel Co.,* 6 Wash. 122, 32 Pac. 1073, there was involved a claim of lien made by one furnishing material to a contractor engaged in the construction of a hotel building for the owners of land upon which it was situated. Disposing of the contention that the plaintiff furnishing the material could not have a lien upon the building and property because the material so furnished by him did not actually go into and become a part of the structure, though furnished for that purpose, Judge Scott, speaking for the court, said:

"Said plaintiffs claimed a lien for materials furnished for said hotel to said Potvin as contractor, amounting to $21,000, and it appears that of this amount only $2,300 was used in the construction of the building, said building never having been completed, and said contractor having abandoned work thereon. It is contended by the appellant, the Denny Hotel Company, that there can be no lien for materials furnished which were not used in the construction of the building; and it is further contended that a right to a lien for the materials that were used was lost in consequence of the respondent having intermingled said claim with the claim for materials not used. It is conceded that said materials were all furnished under a contract between said respondent and said contractor, and that the same were specially designed and made for said building, and are necessary to the completion of the building; that they have been delivered and are now upon the premises at the building. It further appears that the only reason why the same have not been used is in consequence of the contractor having suspended work. Under such circumstances we think the right to a lien for all of said materials exists."

At the time of the rendering of that decision, the portion of the lien statute above quoted was the law, as it now is, though that section was thereafter in some other respects amended. Since then there have been some other decisions rendered by this court which counsel for appellant rely upon as a modification of the view of the law there expressed. One of those is the case of *Puget Sound State Bank v. Gallucci*, 82 Wash. 445, 144 Pac. 698, Ann. Cas. 1916A 767. That case involved a claim of the bank against the surety upon a bond given under our bond statute, above quoted, but with an additional condition in the bond rendering, as we then thought, the surety liable upon the bond for the payment of debts incurred in the performance of the work, in the sense that it was

liable for the repayment of the money borrowed by the contractor and used in the payment of debts incurred in the performance of the work. In that case the trial court awarded judgment against the bond for the money so borrowed and used, taking pains, however, to limit the bank's recovery to an amount equal to the money so borrowed which could be traced into payments made therefrom for labor actually performed and material actually furnished in the carrying on of the work. We affirmed that holding of the trial court, and were not called upon to determine whether or not the surety was liable to any greater extent. This, we think, is not a holding in the least contrary to the view of the law expressed in the *Denny Hotel* case, above quoted from.

Another of our decisions relied upon as lending support to this contention made in appellant's behalf is that in *Lipscomb v. Exchange National Bank,* 80 Wash. 296, 141 Pac. 686, which involved the claim of an architect for a lien securing his claim of compensation for preparing plans for a building which was not constructed. A critical reading of that case, however, will show that the architect was held not entitled to a lien upon the land, because of his knowledge of the possible impracticability of the scheme by which it was to be financed, the fact that he had agreed to be compensated in part by interest bearing obligations of the corporation undertaking the project, the fact that he had been paid in cash to the extent agreed upon, and the fact that the project failed of consummation because of the failure of the contemplated financing scheme. Another of our decisions relied upon by counsel for the appellant is that in *State Bank of Seattle v. Ruthe,* 90 Wash. 636, 156 Pac. 540, wherein there was involved a claim against a contractor's bond

for the labor of teams furnished in carrying on the work, and it was held that the claim was allowable as against the bond only for the actual number of days the teams so labored, though they were in the possession of the contractor a larger number of days. We think that case is not controlling here, since the only thing furnished was the labor of the teams while they were actually employed on the work.

The decisions of the courts of other jurisdictions are seemingly out of harmony upon the question of the necessity of material being actually used and becoming a part of the structure in order to sustain a lien for the value thereof in favor of one furnishing such material. This conflict, however, we think, may, in many instances, be regarded as more apparent than real, and as growing out of the difference in the language of the different statutes giving the right of lien. Of course, where a statute by its terms gives a lien right only for material actually going into and becoming a part of the structure, as some of them do, such a condition is necessary to support a claim of lien thereunder; but such are not the terms of our lien or bond statute.

In the early case of *Hinchman v. Graham,* 2 Serg. & R. (Pa.) 170, a view of the law was expressed with which our *Denny Hotel* case, above quoted from, is in full harmony. In that case the material seems to have been furnished by a materialman to the owner of the building to be used in the construction thereof, which material was not used therein, such failure not being the fault of the materialman. In holding that it was not necessary that the material go into and become a part of the structure as a prerequisite to the materialman's rights, Chief Justice Tilghman said:

". . . The act of assembly makes the house subject to all debts 'contracted for or by reason of any

materials found and provided by any lumber-merchant etc. *for* or *in the erecting and constructing of such house'*; that is to say, furnished *for* the erection of the house, or used *in* the erection of the house. The expressions seem intended to meet the very case which has occurred. The merchant having sold and delivered the materials, for the purpose of being used in the building, could do no more; it would be unjust, therefore, to throw upon him the risk of their future application. But it is said, that there is a distinction between materials delivered *at or near* the building, or at a *distance* from it; but I cannot see it, provided the delivery *at a distance* was in the *usual course of business,* as it was in this case. It is customary to prepare part of the carpenter's work at the shop; why then should the boards be thrown down first at the building, in order to be taken up again and carried to the shop? The delivery at one place or another, is no further important, than that it furnishes evidence of the purpose for which the materials were sold. The act of assembly makes no mention of the place of delivery. . . . I am of the opinion, that the account of C. & J. Remington should be allowed as a lien, although the lumber was not delivered *at or near* the house, or *used in the building of the house.''*

In *White v. Miller,* 18 Pa. St. 52, Chief Justice Gibson, speaking for the court, adhered to this view of the law and held it applicable to the claim of a materialman furnishing material to a contractor instead of to the owner direct, observing in part as follows:

''As soon as owners of lots ceased to be their own builders, they put it in the power of the persons employed by them to occasion losses to mechanics and materialmen which they ought not to bear; and it was to remedy this mischief that the legislature established the principle that materials and labor are to be considered as having been furnished on the credit of the building, and not of the contractor. The principle is not only a just but a convenient one. Whether the builder be the agent of the owner or an independent

contractor, his appointment to the job creates a confidence in him which was not had before; and the consequences of a false confidence ought not to be borne by those who had no hand in occasioning it.''

In *Beckel v. Petticrew,* 6 Ohio St. 247, there was involved a claim of lien for material which did not go into or become a part of the building. In holding that the one furnishing such material in good faith for the construction of the building had a lien therefor, Judge Scott, speaking for the court, said:

''The first section of the act referred to provides 'that any person who shall furnish materials for erecting or repairing any house or other building, by virtue of an agreement with the owner thereof, shall have a lien,' etc. We think a fair construction of this section must extend the lien to all the material in good faith furnished *for the purpose of* erecting or repairing a house in pursuance of an agreement with the owner, notwithstanding a part of the material may subsequently be otherwise appropriated without the consent of the party furnishing it.''

In *Berger v. Turnblad,* 98 Minn. 163, 107 N. W. 543, 116 Am. St. 353, there was involved a claim of lien for work upon material furnished for the building, done at the instance of the contractor at a shop away from the building, which material, and hence such work, did not go into the structure. In holding that the claimant had a right of lien under such circumstances, Chief Justice Start, speaking for the court, said:

''The necessary inference from the two decisions we have cited is that mechanics and materialmen furnishing labor or materials for the erection of a building, at the request of the contractor, are given by the statute not simply the right to be subrogated to the rights of the contractor, but an independent right to a lien on the building and land upon which it stands, which cannot be defeated by the misconduct or fraud of the

contractor. The owner when he enters into a contract
with a builder for the erection of a house is deemed to
contract with reference to the statute which becomes
a part of the contract and in legal effect he thereby
consents that his contractor may, subject to the condi-
tions and limitations of the statute, pledge the credit
of the building for the necessary labor and materials
for its construction in accordance with the contract.
*Laird v. Moonan,* 32 Minn. 358, 20 N. W. 354; *Bohn v.
McCarthy,* 29 Minn. 23, 11 N. W. 127; *Bardwell v.
Mann,* 46 Minn. 285, 48 N. W. 1120. It is true as a
general rule that to entitle a mechanic or materialman
to a lien for work performed or materials furnished
at the request of the contractor, the work must be
done, or the material delivered on the premises upon
which the building is being erected. The case of *Howes
v. Reliance Wire-Works Co., supra* [46 Minn. 44, 48
N. W. 448], however, establishes an exception to this
rule which is to the effect that where the material
required for the erection of a building is specially
prepared for it at the shop of the contractor with the
consent of the owner, the material is deemed to have
been furnished on the premises. The exception ought
not to be extended to cases not fairly within the
principle upon which it rests, otherwise the door will
be opened for fraud or collusion between the con-
tractor and the mechanic or materialman.

"The findings of the trial court in this case brings
it clearly within the exception, for the work of the
plaintiff was by the consent of the defendant, per-
formed at the shop and it was there passed upon by
the defendant, by his architect, as the work pro-
gressed. The defendant and the contractor adopted
the shop as the place for doing the work which was
necessary to be done in the erection of his house. The
plaintiff's right to a lien then is exactly what it would
have been if he had performed the labor in the prepa-
ration of the materials for the erection of the house
on the premises on which it was being built, and the
contractor had refused to permit the product of his
work to be placed in the house. It follows that the

fact that the work was done at the shop and not on the premises does not affect the plaintiff's right to a lien.''

While we concede that the authorities are not harmonious upon the question of the necessity of material actually going into and becoming a part of the structure in order to support a lien right, which is the particular question we are now considering, we think the decided weight of authority is in harmony with the early holding of this court in the *Denny Hotel* case, and the cases from other courts above quoted from. This view of the law finds support in the following authorities: *Trammell v. Mount,* 68 Tex. 210, 4 S. W. 377, 2 Am. St. 479; *Watts v. Whittington,* 48 Md. 353; *Nelson, Benton & O'Donnell v. Iowa East. R. Co.,* 51 Iowa 184, 1 N. W. 434, 33 Am. Rep. 124; *Burns v. Sewell,* 48 Minn. 425, 51 N. W. 224; *Crane Co. v. United States Fidelity & Guaranty Co.,* 74 Wash. 91, 132 Pac. 872; Phillips, Mechanics' Liens (3d ed.), p. 260; 2 Jones, Liens (3d ed.), § 1329.

Now is appellant rendered liable upon its bond for the material furnished in good faith by respondent with the understanding that it was to be used in the construction of the plant, though not so used, as property privately owned would be under our lien statute? It is true the contractor and subcontractor are not, by express words in the statute, made the agents of the surety upon the bond for the contracting of such liability, as they are made the agents of the owner of private property by the language of our lien statutes; but we think, nevertheless, in the view of the law announced in the Pennsylvania and Minnesota cases, above quoted from, the contractor and subcontractor do become the representatives of the surety for the purpose of contracting such liability as against the surety. We have seen that the statutory condition of

the bond which was given in this case is that the contractor shall pay subcontractors and all persons who shall supply subcontractors "with provisions and supplies *for the carrying on of such work.*" The words "provisions and supplies," so used, we think, include materials such as the sheet metal furnished by respondent; and the words "for the carrying on of such work" refer to the furnishing to subcontractors of such material for that purpose in good faith, though it may not be actually used in the construction of the building or plant, by reason of some fault of the contractor or subcontractor, and without fault of the one so furnishing the material.

It is further contended in appellant's behalf that respondent's claim against appellant, as surety on the bond, must fail because the material so furnished by it was not delivered at or near the school building in which the plant was being installed. The decision of the Pennsylvania court in *Hinchman v. Graham,* above quoted from, is authority against this contention, as is also the decision of the Minnesota court in *Berger v. Turnblad,* above quoted from. This view of the law also finds support in *Trammell v. Mount, supra,* and *Evans Marble Co. v. International Trust Co.,* 101 Md. 210, 60 Atl. 667, 109 Am. St. 568. The following of our decisions, it is insisted, hold to the contrary, but we think they do not do so when critically read: *Knudson-Jacob Co. v. Brandt,* 44 Wash. 68, 87 Pac. 43, was the sale and delivery of the material to one who was engaged in constructing a number of houses, and was made under such circumstances, as it was there held, that it could not be determined what particular portion of the material was furnished for any particular house. This was the real reason that the lien claim could not be sustained. In *Little Bros. Mill Co. v.*

*Baker,* 57 Wash. 311, 106 Pac. 910, 135 Am. St. 980, the lien claim failed for the same reason. In *Gate City Lumber Co. v. Montesano,* 60 Wash. 586, 111 Pac. 799, there was involved a claim against the city of Montesano because of its failure to require of the contractor a bond in compliance with the statute, it being for lumber claimed to have been furnished for the carrying on of the work. The claimed delivery consisted only of the lumber company placing the lumber upon cars at a railroad station for shipment, some distance from the place where the work was being carried on. Thereafter a large part of the lumber was diverted and not used in the structure at all. This, it was held, was not such a delivery at or near the place where the lumber was to be used as to give the lumber company a right of action upon the bond. In that case there was no understanding and no necessity for the lumber being delivered at a shop or place where the contractor or subcontractor was specially preparing his material before being placed in the structure, as in this case.

We think none of these cases are controlling here. The question of whether a delivery of material to a contractor or subcontractor is such as to entitle the one so furnishing it to recover upon the bond if the work be public, or to a lien if the work be private, is not one which can be determined by a hard and fast rule applicable to all cases. It seems to us that, where material is delivered to a subcontractor in good faith for the carrying on of the work, as in this case, at a convenient shop of the subcontractor, where it is understood that the material is to be prepared for the structure, and the work of such preparation is there actually being done, such a delivery is sufficient to entitle the materialman so furnishing and delivering the

material to recover upon the bond given for the security of the materialman. In other words, we think such a delivery is, in effect, the same as if made at the place where the material is to become a part of the structure.

We conclude that the judgment must be affirmed. It is so ordered.

MAIN, C. J., MOUNT, HOLCOMB, and FULLERTON, JJ., concur.

### ON REHEARING.

[*En Banc.* May 31, 1919.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court still adhere to the opinion heretofore filed herein, and for the reasons there stated, the judgment is affirmed.