**THOMPSON PLUMBING COMPANY, INC., et al., Appellants,**

**v.**

**McGLYNN COMPANIES, et al., Defendants,**

**Construction Mortgage Investors Co., Inc., Respondent.**

**No. C9–91–1871.**

Court of Appeals of Minnesota.

June 2, 1992.

Reese E. Chezick, Moss & Barnett, Minneapolis, for appellants.

Gerald G. Workinger, Jr., Minneapolis, for respondent.

Considered and decided by AMUNDSON, P.J., and PETERSON and MULLALY,* JJ.

## OPINION

PETERSON, Judge.

Thompson Electric and Thompson Plumbing appeal from a judgment setting priorities in a mechanics' lien action in favor of Construction Mortgage Investors Company. We affirm in part, reverse in part and remand.

## FACTS

In the spring of 1985 Bay Woods Ventures began developing a tract of land bordering Lake Minnetonka. Bay Woods contracted with a surveyor to lay out roads and stake lot perimeters. It was standard procedure for the Bay Woods surveyor to place an iron marker and a flagged wooden lathe marker at each corner of each lot in the development. The developer testified that it was necessary to stake the corners of the lots in order to show the lots to prospective buyers.

In October 1985 McGlynn Companies ("McGlynn") signed an agreement to purchase three parcels of land in the development including the lot at issue in this case. McGlynn hired Cardarelle & Associates to survey the lot and to place markers showing the proposed location of a house on the lot. Frank Cardarelle testified that he inspected the lot with Andrew McGlynn shortly before November 19, 1985, and that he saw iron and flagged wooden markers at the corners of the lot. Cardarelle and

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

his son placed wooden markers at the corners of the proposed house on November 23, 1985.

On November 22, 1985 McGlynn closed the purchase of the land. On that date it also executed and filed a mortgage with Construction Mortgage Investors Company ("CMIC"). Also on that date, a priority inspector from CMIC's title insurance carrier visited the property. He testified that he did not see any markers of any kind on the property. The inspector took photographs that were received in evidence. There are no markers in the photographs, but there is some debate concerning the geographic scope of the photographs. The trial court found that the developer's surveyor placed a clearly visible marker at each corner of the lot prior to November 22, 1985, and that McGlynn's surveyor placed stakes on the lot after November 22, 1985.

McGlynn hired Thompson Plumbing and Thompson Electric (referred to collectively as "Thompson") to contribute to the construction of a house on the lot. Thompson Plumbing began work on April 22, 1986, and ended work on May 28, 1987. Thompson Electric started work on March 11, 1986, and ended work on July 20, 1987. McGlynn failed to pay for the work, and Thompson filed mechanics' liens on September 2 and 3, 1987. McGlynn also failed to meet its obligations under the mortgage agreement. CMIC foreclosed and purchased the property on July 17, 1987.

In this action, Thompson seeks to enforce its liens over CMIC's mortgage. The trial court held that the liens were valid, but that under Minn.Stat. § 514.05 (Supp.1987) the mortgage had priority over the liens because the liens could not relate back to the staking of the lot corners. Accordingly, the trial court discharged the liens and entered a $22,000 judgment against McGlynn for the work done by Thompson.

Thompson appeals, arguing that its liens relate back in time to the staking of the lot corners, which occurred before the CMIC mortgage was filed. CMIC also seeks review, arguing, among other things, that the mechanics' liens cannot relate back to the time the developer staked the lot corners because that was not the same improvement to which Thompson contributed.

## ISSUES

I. Did the trial court err in applying the law in existence at the time of trial rather than the law in existence when Thompson's right to lien accrued?

II. Under the applicable version of Minn.Stat. § 514.05, are Thompson's liens entitled to priority over CMIC's mortgage?

## ANALYSIS

### I.

At the outset, we affirm the trial court's conclusion that Thompson's liens are valid. Whether the liens have priority over CMIC's mortgage depends upon what item of material or labor constituted the actual and visible beginning of the improvement to which Thompson made its contributions.

Whether staking can constitute the actual and visible beginning of the improvement to property in this case depends on which version of Minn.Stat. § 514.05 applies. From spring 1985 until July 20, 1987, the period during which the developer staked the lot corners and Thompson began and finished work at the lot in question, Minn.Stat. § 514.05 (1986) provided that:

> All such liens, as against the owner of the land, shall attach and take effect from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement, and shall be preferred to any mortgage or other encumbrance not then of record, unless the lienholder had actual notice thereof. As against a bona fide purchaser, mortgagee, or encumbrancer without notice, no lien shall attach prior to the actual and visible beginning of the improvement on the ground, but a person having a contract for the furnishing of labor, skill, material, or machinery for such improvement, may file for record with the county recorder of the county within which the premises are situated, or, if claimed under section 514.04, with

the secretary of state, a brief statement of the nature of such contract, which statement shall be notice of that person's lien. *Engineering or land surveying services with respect to real estate shall not constitute the actual and visible beginning of the improvement on the ground referred to in this section, except when such engineering or land surveying services include a visible staking of the premises.* No lien shall attach for engineering or land surveying services rendered with respect to a purchaser for value if the value of those services does not exceed $250.

(Emphasis added.)

Effective August 1, 1987, the legislature amended section 514.05 by repealing the last two sentences cited above and adding a subdivision that states:

> Visible staking, engineering, land surveying, and soil testing services do not constitute the actual and visible beginning of the improvement on the ground referred to in this section. This subdivision * * * affects only the determination of when the actual and visible beginning of the improvement on the ground, as the term is used in subdivision 1, has commenced.

Minn.Stat. § 514.05, subd. 2 (Supp.1987).

Under the 1986 version of Minn.Stat. § 514.05, engineering and land surveying services can constitute the actual and visible beginning of an improvement if the services include visible staking of the property. Under the 1987 version of the statute, these services cannot constitute the actual and visible beginning of an improvement even if they include visible staking of the property.

■ The trial court applied the 1987 version of the statute, and concluded that CMIC's mortgage had priority since the Thompson liens could not relate back to staking of the lot corners by the developer. This court need not defer to a trial court's ruling on a legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

CMIC argues that on its face, the 1987 law applies because the lien statements in this case were filed *after* the 1987 amendment became effective. In construing mechanics' lien laws of old, the Minnesota Supreme Court held that courts should apply the law existing at the time the right to a lien accrues. *Hill v. Lovell,* 47 Minn. 293, 294, 50 N.W. 81, 81 (1891). Therefore, this court must determine when Thompson's rights to the liens accrued and what law was then in effect.

CMIC equates the perfection, or filing, of the lien with the accrual of the right to a lien. If CMIC is correct, then the law in effect at the time of filing would give priority to CMIC's mortgage. However, case law does not support CMIC's claim.

> Although we have sometimes spoken, perhaps without strict accuracy, of the *filing* of the lien as *creating* the lien, yet it is merely the means of preserving and perfecting it. It is the performance of the work or the furnishing of the material which, under the statute, gives the right to a lien.

*Bardwell v. Mann,* 46 Minn. 285, 286, 48 N.W. 1120, 1121 (1891). In *Bardwell,* as in the present case, the lienor began and finished work before an amendment to the mechanics' lien statute became effective, but filed his lien statement after the amendment became effective. The court held that the law existing at the time the work was finished controlled the outcome, not the law existing at the time of filing. *Id.*

Accordingly, under *Bardwell,* the law applicable to this case is the law existing at the time the work was finished. Under the law in effect when Thompson finished work, land surveying services on the premises could constitute the actual and visible beginning of the improvement on the ground because the land surveying services included a visible staking of the premises and the Thompson liens could assume priority.

## II.

■ However, CMIC argues that legislative history indicates that the legislature intended that the 1987 amendment apply

retroactively. Newly enacted laws or amendments are presumed to apply prospectively unless there is an unambiguous legislative expression to the contrary. *Lovegren v. People's Elec. Co.*, 380 N.W.2d 791, 795 (Minn.1986). There is no language in the 1987 amendment that indicates the legislature intended the amendment to apply retroactively. The trial court noted, however, that comments by two legislators during committee hearings indicate that they intended to "clarify" or "clear up" conditions under existing law. *Hearing on S.F. No. 189 Before the Committee on the Judiciary* (Apr. 24, 1987) (Senator Jude's comments); *Hearing on H.F. No. 1031 Before the Committee on the Judiciary* (Mar. 31, 1987) (Representative Rest's comments); *Hearing on S.F. No. 189 Before the Civil Law Subcommittee on the Judiciary* (Mar. 20, 1987) (Senator Jude's comments).

■ Acts that merely clarify, rather than modify, existing law may be applied retroactively. *Nardini v. Nardini*, 414 N.W.2d 184, 196 (Minn.1987). In *Nardini* the supreme court held that an act passed after a dissolution judgment should apply retroactively, despite the absence of specific statutory language approving retroactive application, because other factors "clearly" manifested the legislature's "unmistakable" intent to clarify, rather than to modify existing law. *Id.* The court noted the amendment at issue was entitled "An act * * * clarifying factors to consider in awarding maintenance in marriage dissolution actions." The court also noted as "compelling" evidence two comments by a legislator to the effect that the amendment was intended to confirm the notion that the provision for temporary maintenance in the original act was not meant to preclude an award of permanent maintenance in appropriate cases. *Id.* at 196 n. 10.

■ We do not find similar evidence of an intent to clarify rather than modify existing law in this case. Where the legislature amends a statute by changing the wording of the original version, it is presumed that the legislature intended to effect a change in the law rather than a clarification of the law. *Western Union Tel. Co. v. Spaeth*, 232 Minn. 128, 132, 44 N.W.2d 440, 442 (1950).

Similarly, no indication of an intent to clarify rather than change the statute is expressed in comments made by two legislators in response to this court's opinion in *R.B. Thompson, Jr. Lumber Co. v. Windsor Dev. Corp.*, 383 N.W.2d 362 (Minn.App. 1986) ("*Windsor II*"), *pet for rev. denied* (Minn. May 21, 1986). In *Windsor II* this court called upon the legislature to amend the statute in order to alleviate uncertainty *in the mortgage and construction* industry. However, nothing in the opinion indicated uncertainty about the wording or meaning of the statute itself. *See id.* at 366–68. It appears that in 1987 the legislature simply responded to complaints raised by lenders when it in effect repealed a 1974 amendment to the mechanics' lien statute that permitted engineering and land surveying services to constitute the actual and visible beginning of an improvement when the services include visible staking of the premises. *See* 1974 Minn. Laws ch. 381.

■ CMIC also argues that the amendment should be applied retroactively because it affects unvested, remedial rights rather than substantive rights. We disagree. Recent Minnesota case law requires that a court first find evidence that the legislature intended that the new law apply retroactively before considering the distinction between changes in substantive versus remedial law.

> Generally, it is immaterial whether a law alters procedural or substantive rights; the legislature must still express its intention to make it retroactive.

*Lovgren*, 380 N.W.2d at 795 (quoting *In re Estate of Murphy v. State*, 293 Minn. 298, 308, 198 N.W.2d 570, 576 (1972)). In other words, a court may not apply a change retroactively simply because the change affects only a remedy; the court must first find some evidence that the legislature intended that the change apply retroactively.

■ In the present case, there is no need to consider the distinction between substance and procedure because there is no legislative indication that the 1987 amend-

ment should apply retroactively. There is no basis to apply the amendment retroactively whether it is substantive or procedural. Accordingly, we reverse the trial court's determination that the 1987 amendment applies retroactively and we next consider whether the liens are entitled to priority over the mortgage under the 1986 version of the statute.

### III.

■ CMIC argues that Thompson's liens cannot relate back to the staking of lot corners because that staking was not part of the same improvement contributed to by Thompson. This argument has merit because different contributions may relate to different improvements even though all the contributions and resulting improvements are part of the same overall project. *See National Lumber Co. v. Farmer & Son, Inc.,* 251 Minn. 100, 104, 87 N.W.2d 32, 36 (1957).

In *National Lumber* the court held that the construction of a fence to protect a tree from heavy machinery prior to the excavation of a foundation did not constitute the first contribution to the improvement to which subsequent lien holders contributed. The court reasoned that the construction of the fence was severable and separable from the latter work.

> [T]he line of distinction is whether or not the [contribution] bears directly on the construction of the building rather than whether it is part of the overall project involved.

*Id.*

This court has applied *National Lumber* in two cases: *R.B. Thompson, Jr. Lumber Co. v. Windsor Dev. Corp.,* 374 N.W.2d 493, 497 (Minn.App.1985) (*"Windsor I"*) (staking of building pad sufficiently identified with the eventual construction of a building to constitute first improvement), *pet. for rev. denied* (Minn. Nov. 25, 1985) and *E.H. Renner & Sons, Inc. v. Sherburne Homes Inc.,* 458 N.W.2d 177, 179 (Minn.App.1990) (paving of streets, curbs and gutters in development not directly related to the construction of buildings and does not constitute first improvement).

Following the *National Lumber* reasoning, to determine whether the lien for a specific item of labor or material has priority over a specific recorded mortgage it is first necessary to identify the improvement to which the labor or material contributed. It is then necessary to determine what item of labor or material constituted the actual and visible beginning of that improvement. This is a factual determination.

> Whether the [labor or material] also constituted the actual and visible beginning of the improvement is, as we have long held, a question of fact, for § 514.05 in effect imposes a duty on a purchaser or encumbrancer to examine the premises for the beginning of any actual and visible improvements before a sale or mortgage transaction is completed.

*Kloster–Madsen, Inc. v. Tafi's, Inc.,* 303 Minn. 59, 64, 226 N.W.2d 603, 607 (1975).

If the labor or material that constituted the actual and visible beginning of an improvement was provided on the premises before a mortgage was recorded and a subsequent item of labor or material is a contribution to the improvement, the lien for the subsequent item of labor or material has priority over the mortgage. Minn. Stat. § 514.05 (1986).

■ In this case, there would be no question that Thompson's liens would relate back to the staking of the lot corners if the corner stakes were placed by the builder to direct excavation for the foundation of the house built on the lot. However, because staking cannot constitute the actual and visible beginning of an improvement under the 1987 version of the statute, the trial court made no factual determination whether the staking of the lot corners constituted the actual and visible beginning of the house or was part of a separate and severable improvement. We therefore remand for a factual determination on this issue.

We note that there is authority to the effect that staking of any kind for any purpose automatically constitutes the actual and visible beginning of an improvement according to the literal terms of Minn.Stat.

514.05 (1986). In *Windsor II* this court held that liens for work contributed to dwellings built in 1983 had priority over mortgages recorded in the same year because the liens related back to 1981 when the developer grade-staked and graded the entire development, and constructed building pads, staking the corner of each pad. *Windsor II,* 383 N.W.2d at 365.

However, the *Windsor II* court did not differentiate between separate improvements. Grading and staking the development might not, as a factual matter, constitute the actual and visible beginning of a dwelling; this grading and staking could be part of a separate improvement that is part of the overall project involved while staking and constructing a building pad might, as a factual matter, constitute the actual and visible beginning of a dwelling.

Under the *Windsor II* court's interpretation of Minn.Stat. § 514.05 (1986), a lien for material supplied for the construction of a house in 1992 could relate back to the time a developer staked the premises for any purpose. We agree with the *Windsor II* court's observation that the legislature could not have intended this result. The uncertainty and additional costs identified by the court would result if the statute is interpreted in this manner. *See id.* at 367– 68.

However, we disagree with the *Windsor II* court's conclusion that the plain language of Minn.Stat. § 514.05 (1986) mandated this result. We believe the legislature intended to distinguish among separate improvements in Minn.Stat. § 514.05 (1986) because the legislature employed references to one particular improvement, rather than any improvement:

> As against a bona fide purchaser, mortgagee, or encumbrancer without notice, no lien shall attach prior to the actual and visible beginning of *the improvement* on the ground * * *. Engineering or land surveying services with respect to real estate shall not constitute the actual and visible beginning of *the improvement* on the ground referred to in this section, except when such engineer-

ing or land surveying services include a visible staking of the premises.

Minn.Stat. § 514.05 (1986) (emphasis added).

Words and phrases are to be construed according to the rules of grammar and according to common and approved usage. Minn.Stat. § 645.08(1) (1990). Clearly, the legislature was not referring to "any" improvement, but "the" improvement, that is, one particular improvement. The improvement referred to in the statute is the specific improvement to which subsequent suppliers or laborers contributed. If the language is read to refer to any improvement, then the lien of a carpenter who adds a deck to an existing house could relate back to the time when the foundation of the house was originally staked, or even when the developer staked the corners of the lot. By referring to "the" improvement, the plain words of the statute allow the carpenter's lien to relate back only as far as the time when the first item of labor or material was contributed to the deck, because that was the improvement to which the carpenter contributed.

When the act of staking is attributed only to the improvement contemplated by the staking party, and not to any subsequent improvement contemplated by a different party, the resulting determination of priority comports with the plain terms of the statute. While staking can be the actual and visible beginning of an improvement under the 1986 statute, a single act of staking is not the beginning of every subsequent improvement on the property.

Finally, the trial court noted in its memorandum that even if the 1986 version of Minn.Stat. § 514.05 were applied, Thompson would not prevail because the statute does not allow a lien for engineering or land surveying services if the value of those services does not exceed $250 and Thompson failed to establish that the services here met this threshold. Under the statute, surveying services that are accompanied by staking can be the actual and visible beginning of an improvement even if the value of the services does not exceed this threshold amount. The threshold

amount only prevents the lien for the surveying services from attaching; it does not prevent liens for other services from relating back to the staking for purposes of establishing priority.

## DECISION

The trial court erred by giving retroactive application to the 1987 version of Minn. Stat. § 514.05. Under the plain terms of Minn.Stat. § 514.05 (1986), mechanics' liens relate back to the actual and visible beginning of the improvement to which the lienor contributed. Under Minn.Stat. § 514.05 (1986), land surveying services can constitute the actual and visible beginning of an improvement if the services include visible staking, but whether specific surveying services constitute the actual and visible beginning of an improvement is a question of fact.

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.