## McCLINTIC–MARSHALL CO. v. SCANDINAVIAN–AMERICAN BLDG. CO. et al.

(District Court, W. D. Washington, S. D.  March 31, 1922.)

### No. 117.

1. **Mechanics' liens** ⬅➡48—**As between lien claimants, right exists only for material delivered on premises.**

   Under Rem. & Bal. Code Wash. § 1129, giving the right to a lien to "every person performing labor upon or furnishing material to be used in the construction * * * of any * * * building," as between lien claimants there is no right to a lien on the part of any claimant for any material or fixture not delivered on the premises where the building was in course of construction, nor for any labor performed on any such material or fixture.

2. **Mechanics' liens** ⬅➡208—**Waivers of lien obtained by false representations held not binding.**

   Waivers of lien in contracts by subcontractors for furnishing labor or material for the construction of a building, induced by false representations that all other contracts contained similar waivers, and that funds had been secured to pay for all the work and materials, *held* not binding.

3. **Mechanics' liens** ⬅➡199—**Held superior to lien of vendor for purchase money.**

   A bank, which organized and controlled a building company for the purpose of constructing a building for the bank on its property, which it conveyed to the building company by warranty deed, *held* not entitled to assert a lien for purchase money as against mechanic's lien claimants under contracts with the building company for construction of the building.

4. **Mechanics' liens** ⬅➡48—**Delivery on premises essential to lien for materials.**

   The facts that a contract for furnishing mill work for a building provided that it should be taken as fast as completed, that a large part of it after completion and acceptance was kept by the contractor in storage at the request of the owner, because the building was not ready for it, and that payments were made thereon, *held* not to take the case out of the rule that under the statute, as against other lien claimants, the contractor was entitled to a lien only for material delivered on the premises.

In Equity. Suit by the McClintic-Marshall Company against Scandinavian-American Building Company and others. Decree determining and fixing priority of liens.

Hayden, Langhorne & Metzger, of Tacoma, Wash., for complainant.

Kelly & MacMahon and F. D. Oakley, both of Tacoma, Wash., for defendant Bank & Building Co.

Chas. Bedford, Davis & Neal, and L. R. Bonneville, all of Tacoma, Wash., for labor claimants.

De Witt Evans, of Tacoma, Wash., for F. R. Schoen.

Bates & Peterson, of Tacoma, Wash., for Puget Sound Iron & Steel Works.

Stiles & Latcham, of Tacoma, Wash., for F. H. Godfrey and Ben Olson & Co.

S. F. McAnally, of Tacoma, Wash., for W. L. Owens and C. H. Boedecker.

Burkey, O'Brien & Burkey, of Tacoma, Wash., for City Lumber Agency.

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Herbert S. Griggs and L. R. Bonneville, both of Tacoma, Wash., for St. Paul & Tacoma Lumber Co.

W. W. Keyes, of Tacoma, Wash., for Hunt & Mottet and Henry Mohr Hardware Co.

Fitch & Arntson, of Tacoma, Wash., for Savage-Scofield Co.

R. S. Holt, of Tacoma, Wash., for Far West Clay Co.

Grosscup & Morrow, of Tacoma, Wash., for P. & G. Lumber Co.

Chas. Wallace, of Tacoma, Wash., for Colby Star Mfg. Co.

Walter S. Fulton, of Seattle, Wash., for Crane & Co.

Charles P. Lund, of Spokane, Wash., and Davis & Neal, of Tacoma, Wash., for Washington Brick, Lime & Sewer Pipe Co.

E. N. Eisenhower, of Tacoma, Wash., for Ajax Electric Co.

Teats, Teats & Teats, of Tacoma, Wash., for Mullins Bros.

H. A. P. Myers, of Seattle, Wash., for H. C. Green Iron Works.

James W. Reynolds, of Seattle, Wash., for E. E. Davis Co.

Bogle, Merritt & Bogle, of Seattle, Wash., for Otis Elevator Co.

Walter M. Harvey, of Tacoma, Wash., for Edward Miller Cornice & Roofing Co.

Flick & Paul, of Seattle, Wash., for Tacoma Millwork Supply Co.

CUSHMAN, District Judge. The present suit involves a number of asserted liens for labor and material furnished in and for the construction of a building upon that property commonly known as the "Scandinavian-American Building Company" property, and the marshaling of such liens as are established. Upon many of the issues raised, there appear a number of reasons supporting the court's findings, which have been urged by counsel; but, on account of the desirability of an early decision upon the questions involved, the court has, in most instances, done no more than state some one reason which appears sufficient to justify and require that finding.

Further delay is not only prejudicial to the parties to this suit and creditors of the bank, but the court's recollection of the testimony cannot but wane with the passing of time, and the public—as well as the parties—is interested in a speedy determination. Many points have been argued and considered in this case that are pertinent, and the discussion of which here would be appropriate, and no doubt more satisfactory to counsel, who have so earnestly urged them, but the discussion of which would necessarily postpone the determination of this cause. It is therefore deemed sufficient to state that the points made would in many instances support the conclusions reached, and in no way defeat or adversely control any of them.

[1] There are a number of general questions affecting more than one of the liens. Among these is the question of a right to lien for material, materials fabricated, and materials and fixtures specially prepared for the building, but not delivered on the premises to be improved. These questions affect the claims of the Tacoma Millwork Supply Company, Washington Brick, Lime & Sewer Pipe Company, Ben Olson Company, Crane & Co., and Edward Miller Cornice & Roofing Company. The Washington statute involved provides:

"Every person performing labor upon or furnishing material to be used in the construction * * * of any * * * building * * * has a lien

upon the same for the labor performed or material furnished by each * * *" Section 1129, Rem. & Bal. Code.

While this statute has been before the Supreme Court of the state of Washington in many cases, the later expressions of that court to the point in question appear in Western Hdwe. & Metal Co. v. Maryland Casualty Co., 105 Wash. 54, 177 Pac. 703, 181 Pac. 700, and Holly-Mason Hdwe. Co. v. National Surety Co. et al., 107 Wash. 74, 180 Pac. 901. While it may be true that, in a controversy solely between the materialmen, or contractor, or subcontractor, and the owner, the owner will be estopped to deny the lien because of a failure to deliver the material, where any act of his, or act with which he may be charged, has in any way caused such failure, yet, when the substantial controversy is, as it is here, between the lien claimants, no such rule should be applied. While, in a suit by a materialman, the contractor or subcontractor may, where material has been delivered to him for work upon it by him, be considered, in some respects, as the agent of the owner (Western Hdwe. & Metal Co. v. Maryland Cas. Co., 105 Wash. 54, 177 Pac. 703, 181 Pac. 700), the owner is not the lien claimant's agent; nor will the lien claimant himself be considered the agent of the owner in respect to his own lien claims, where he claims to have retained the material in his shop or factory for the purpose of completing necessary work upon it, or because the owner was not prepared to receive it at the building being constructed.

The court holds that there is no lien right on the part of any claimant here for any material or fixture not delivered on the premises where the building was in course of construction, nor for any labor performed upon any such material or fixture. While a contractor or subcontractor may have been held to be the agent of the owner when a materialman delivered material to the contractor or subcontractor for work to be done upon it away from the premises—the owner and his bondsman being thereby estopped to deny the lien because of a want of delivery (Western Hdwe. & Metal Co. v. Maryland Cas. Co., supra) —yet there is no reason that will extend that rule to make one lien claimant, contractor, or subcontractor the agent of another, who has done nothing to clothe him with power or authority.

Cases where fixtures or other material not delivered have been specially prepared, and their value, apart from the structure for which they have been prepared, is little or nothing, make a strong appeal for consideration in equity, yet to allow the lien on that account would lead to unending uncertainty, doubt, and confusion, and to prejudice of others contemplating furnishing material, or who have furnished labor and material. Material delivered upon the premises constitutes notice, not only to the owner, but to other materialmen, laborers, and contractors, of potential charges against the property; but materials not delivered, in the absence of actual knowledge, cannot do so. The case of Western Hdwe. & Metal Co. v. Maryland Casualty Co., 105 Wash. 54, 177 Pac. 703, 181 Pac. 700, was a bond case; that is, a suit upon a statutory bond to secure those performing work or furnishing materials in the installation of a heating plant in a school, which bond is, by statute, required in such cases in lieu of the security which, by the

lien statute, is afforded laborers and materialmen in the improvement of private property.

It has been argued that there is no distinction between such a case and the present; but there is this distinction: A surety on the bond stands behind, or in the shoes of, the principal; he has no lien upon the property, while, as between the lien claimants, there are primary equities to be considered which only remotely affect a surety, if at all. A particular lien claimant has a right, not only to look to the property improved, but to the value of the improvement as it progresses, and to the materials assembled upon, and delivered at the property for its improvement.

Claims of lien for material not actually delivered at the bank building are denied. The following Washington cases—the construction of which court, of the statute involved, this court is bound to follow—require such holding: Knudson-Jacob Co. v. Brandt, 44 Wash. 68, 87 Pac. 43; Crane Co. v. Farnandis, 46 Wash. 436, 90 Pac. 1134; Tsutakawa v. Kumamoto, 53 Wash. 231, 101 Pac. 869, 102 Pac. 766; Gate City Lbr. Co. v. Montesano, 60 Wash. 586, 111 Pac. 799; Western Hdwe. & Metal Co. v. Maryland Cas. Co., 105 Wash. 54, 177 Pac. 703, 181 Pac. 700; Holly-Mason Hdwe. Co. v. National Surety Co. et al., 107 Wash. 74, 180 Pac. 901. Neither lien nor judgment will be decreed for any materials delivered and reclaimed by the lienor, under order of the court or otherwise.

[2] In the contracts of a number of the lien claimants, there is a provision reciting a waiver of any lien on account of the work and material to be furnished under the contract. These waivers were executed upon the strength of statements made by representatives of the defendant in negotiating the contracts that waiver had been made by all others who had contracts, and would be required of those with whom contracts had not yet been made. It was further represented that funds had been provided or secured to pay for the construction of the building. These statements were erroneous. Taking into account the presumption that one would not lightly waive the security afforded by a lien, it is clear that these waivers are avoided, and it is not necessary to determine whether there was actual fraud in the representations made or not, for, if there was not actual fraud, the injurious effect upon the claimants was the same. The representations constitute constructive fraud. If belief in the facts by the negotiating parties were considered only as a mutual mistake, the avoiding of the waiver would be the same, for the claimants entered upon the performance of their contracts before discovery of the mistake.

Mr. Haskell, as receiver of the bank, not as receiver of the building company, acquired a note and mortgage of the building company for $70,000. This mortgage was outstanding at the time the various contracts relating to the construction of the building were made. The receiver's purpose was to protect the property from foreclosure of the underlying mortgage, and, in form, it was a purchase by him. The deed from the bank to the building company of this property was a warranty deed. Under these circumstances, the ordinary rule that it would be inequitable for the court to sanction a receiver's act for the

benefit of one set of creditors, and at the same time to the injury of other creditors, lends no support to those now contending for and invoking this rule, for the bank's creditors are not the building company's creditors; nor are the latter bank creditors, and, while Mr. Haskell is receiver of both the bank and the building company, the money used in taking up the mortgage was the bank's, and he was acting as the bank's receiver, out of the control of this court, in so doing. If, because of the relation between the bank and building company, it is sought to apply such a rule upon all equitable considerations, it can be invoked rather by the lien claimants than by the bank's receiver.

The deed from the bank to the building company being a warranty deed, if the lien claimants were not in privity with the owner, so that they could maintain suit against the bank upon the warranty, the building company and its receiver could maintain such a suit, and anything realized therefrom could be subjected to judgments recovered by the lien claimants. The bank's receiver, in taking up this mortgage, was merely seeking to prevent the further increase of claims against the trust estate in his hands, which, if suffered, would result in the dilution of the assets, and could not but prejudice the depositors and other creditors of the bank. Under these circumstances, to hold the bank receiver's action in taking up the underlying mortgage a purchase, whereby he escaped liability upon the warranty and also secured a position of advantage, where he could defeat the lien claimants, not only has no equity in it, but would be highly inequitable.

Were it not for the fact that control of the building company was had by the bank at all times, it might be that the failure of the building company to deliver to the bank the second mortgage bonds would free the bank from obligation on the warranty, and leave its receiver in a position to purchase the underlying mortgage; but even of that there must be grave doubt, in view of the fact that the breach of the warranty and uncertainty arising therefrom may have been one of the causes preventing the issuance and delivery of such bonds. If it was the intention of those manipulating the affairs of both the bank and the building company to take a part of the $600,000 sought to be realized on the first mortgage of the building company's property and pay off the $70,000 mortgage, and thereby make good the bank's written warranty, it is not perceived that any equities are born to the bank out of the arrangement, particularly so far as the lien claimants are concerned, for the persons so intending were representing to the lien claimants at all times that the $600,000 to be realized was for the completion of the building. The mortgage for $600,000 was to raise that amount, not less. The bank was not a stranger, but its control of the building company created rather a trust relation. The building company was, for many purposes, virtually the agent of the bank to accomplish one of its purposes; that is, the improvement of its property and the providing it with a banking house.

It is not necessary to consider the inconsistency of the bank's receiver's position in asserting the $600,000 mortgage, based on a title warranted by the bank, and, at the same time, asserting the $70,000 mortgage, the existence of which breached the warranty on which the

value of the $600,000 mortgage rested. The right of subrogation is an equitable right, and there is no equity in such a contention.

The bank's receiver also asserts the priority of the $600,000 mortgage held by it, which was issued by the building company to a trustee, to be placed in raising that amount for the construction of the building.

It is not deemed necessary to determine whether the bank and building company were identical for all purposes, or this purpose, or whether the bank was liable to any extent because of the mortgage, or whether there was actual fraud in the handling of the $600,000 mortgage. The court finds from the evidence that, for one purpose, at least, the building company was, in substance, the agent of the bank, that is, to provide it suitable banking quarters, and that anything intended or done beyond that was incidental thereto. Under these circumstances, whatever the rights of a stranger, who had acquired the mortgage and made advances thereon to a less amount than its face, might be, I conclude that, on account of the trust relation growing out of the bank's virtual control of the building company, it could not obtain any advantage over the lien claimants by acquiring such mortgage.

I further find that the advances made by the bank to the building company were—except, possibly, the later ones—made, not upon the credit of the $600,000 mortgage, which it was still sought to dispose of in Eastern cities, but that such advances were made upon the strength of an arrangement whereby the bank was to take certain second mortgage bonds.

If the $600,000 long-term mortgage were placed to secure a debt of a lesser amount immediately falling due, it must be held a pledging for a pre-existing debt, and void. Const. Wash. art. 12, § 6; Farmers' Loan & Trust Co. v. San Diego St. Car Co. (C. C.) 45 Fed. 518; Kemmerer et al. v. St. Louis Blast Furnace Co. et al. 212 Fed. 63, 128 C. C. A. 519; Memphis & Little Rock R. R. Co. v. Dow, 120 U. S. 237, 7 Sup. Ct. 482, 30 L. Ed. 595; In re Progressive Wall Paper Co. (D. C.) 224 Fed. 143. I find no equity in the bank, or its receiver, arising out of these transactions, and hold the bank's receiver a general creditor on account of such advances.

[3] On behalf of the receiver of the bank it is sought to establish a lien for the purchase price of the property superior to that of the lien claimants. As already pointed out, the building company was a company organized and controlled by the bank, to improve its property and secure for itself a banking house. Under these circumstances, such a contention must fall; but this is not the only reason. The arrangement appears to have been that the bank would take from the building company, in payment for the property, a portion of the $750,000 issue of second mortgage bonds, which were never issued. It was the balance of these bonds that was to secure the $400,000 which the building company was representing—when it contracted with the lien claimants—had been provided, along with the money to be raised on the $600,000 mortgage for the completion of the building. There having been a failure to provide the money represented as provided and available, and the deed to the property being a warranty deed, it would be inequitable to establish the priority of a purchase-money lien over

the other lien claimants. Reaching this conclusion, it is not necessary to consider the other questions which have been urged upon this phase of the case.

It has been contended on behalf of the lien claimants that they are entitled to judgment against the bank, as well as against the building company. While in certain particulars the building company is to be considered merely as the agent of the bank, yet the property of the building company, which it was represented to have, still remains to be applied in satisfaction of any established claims. It is true that the representations that $600,000 had been secured upon the first mortgage, and that $400,000 additional was available, were incorrect. Still the representations fall short of such a fraud on the part of the bank and its agent as would authorize the court in holding that the debt created was a debt of the bank, as well as the building company. These were not representations that the building company owned property which it did not own, but are rather to be considered as that it had obtained credit a part of which was secured upon such property, which it did not actually have.

The fact that construction under the contract was not completed renders it necessary, in the case of a number of claims, to adopt some other measure of recovery than the contract price. The most equitable is to approximate, as nearly as possible, the value of that which was furnished and done in partly completing the contract, having primarily in view the contract price and the relative proportion of the contract performed. But adopting this rule does not in any way affect the ranking of the lien claimants, or give them material or labor liens, instead of that of a contractor. The following is a statement of the amounts of recovery fixed and allowed, the rank of the liens, and the attorney's fees allowed:

Judgment and labor lien will be decreed the following claimants in the following amounts:

| | |
|---|---|
| N. A. Hanson | $59.90 |
| A. J. Van Buskirk | 59.90 |
| C. W. Crouse | 49.92 |
| F. L. Swain | 59.90 |
| D. A. Trolson | 59 90 |
| Fred Gustafson | 59.90 |
| E. Scheibal | 59.90 |
| Paul Scheibal | 59.90 |
| F. J. Kazda | 59.90 |
| W. Donnellan | 59.90 |
| P. Hagstrom | 54.90 |
| Arthur Purvis | 59.90 |
| Roy Farnsworth | 59.90 |
| C. B. Dustin | 59.90 |
| L. J. Pettifer | 59.90 |
| Charles Bond | 59.90 |
| L. H. Broten | 59.90 |
| W. Canaday | 49.92 |
| L. R. Lilly | 59.90 |
| F. McNair | 59.90 |
| Dave Shields | 59.90 |
| Ed Lindberg | 44.53 |
| Joe Tikalsky | 48.83 |

F. Monte .............................................................\$44.13
C. Gustafson ......................................................... 38.89
George Larson ....................................................... 44.14
F. Marcelline ....................................................... 30.66
M. Swanson .......................................................... 24.23
William Griswold .................................................... 41.88
O. E. Olson ......................................................... 58.38
C. I. Hill .......................................................... 8.97
Emil Johnson ........................................................ 6.98
C. Peterson ......................................................... 41.88
F. A. Fetterly ...................................................... 42.63
Earl Whitford ....................................................... 44.13
Thomas S. Short ..................................................... 59.90
George W. Hicks ..................................................... 41.88

Attorney's fee allowed \$925.

Judgment and labor lien will be decreed F. R. Schoen for \$198, and a lien for materials, \$10.80. Attorney's fee, \$40.

Judgment and labor liens will be decreed on account of labor performed by the following named persons in the various amounts stated:

A. E. Smith ........................................................\$41.88
J. H. Ehret ......................................................... 11.97
John Gallagher ...................................................... 8.97
Pat Keenan .......................................................... 54.13
H. R. Doremus ....................................................... 41.88
R. Davey ............................................................ 41.88
L. A. Williams ...................................................... 11.97
David Bain .......................................................... 41.88
P. J. Bergsten ...................................................... 17.45
Charles Nichols ..................................................... 10.10
E. H. Geister ....................................................... 11.91
Roy Hix ............................................................. 55.88
Fred Denham ......................................................... 55.88
Harry R. Pitcher .................................................... 51.88
John Elixt .......................................................... 55.88
John Hampson ........................................................ 41.88
J. S. Kelly ......................................................... 35.90
C. A. Anderson ...................................................... 11.97
L. J. Hunt .......................................................... 46.39
R. F. Wells ......................................................... 11.97
C. Colburn .......................................................... 9.35
Robert Comar ........................................................ 41.88
J. P. Brislin ....................................................... 54.89
Erich Holmer ........................................................ 42.26
John Lentz .......................................................... 8.97
J. M. Collins ....................................................... 38.89
W. S. Snyder ........................................................ 58.21
C. O. Bodum ......................................................... 9.72
W. Tabor ............................................................ 49.38
M. P. Jones ......................................................... 8.97
Dan Haley ........................................................... 35.90
Henry Poff .......................................................... 8.97
C. A. Carlson ....................................................... 51.88
H. Simons ........................................................... 55.38
Bert Morton ......................................................... 8.97
H. J. Ramsey ........................................................ 55.88
W. P. Wells ......................................................... 55.88
J. H. Calhoun ....................................................... 11.97
Ed Hobson ........................................................... 13.47
N. L. Morris ........................................................ 55.88
Andrew Bratten ...................................................... 56.88

D. E. Kennan ........................................................$11.97
W. K. Herendeen ..................................................... 8.97
F. H. Madsen ....................................................... 95.34
Roger E. Chase .....................................................107.25
David L. Glenn ..................................................... 18.00
W. M. House ........................................................ 47.89
S. Rounsley ........................................................ 41.88
I. Lorass .......................................................... 49.38
J. M. Kryci ........................................................ 55.88
A. Johnson ......................................................... 41.88
F. N. Bergen ....................................................... 41.88
C. Olson ........................................................... 41.89
Samuel Rothstein ................................................... 13.33

$14.80 is allowed for the expense of filing these liens, and an attorneys' fee of $1,000 is allowed.

Judgment and a materialman's lien will be decreed upon the claim of the Puget Sound Iron & Steel Works for $495.90. While this claim has been asserted as a labor lien, yet the work was done away from the building at claimant's shop upon material brought from the building to the shop and returned to the building. Under these circumstances, the lien should be ranked as a materialman's lien, and not as a labor lien. An attorney's fee of $100 is allowed.

Judgment and labor lien are decreed F. H. Godfrey in the amount of $750. Attorney's fee of $125 allowed.

Judgment and labor lien decreed W. L. Owens in the amount of $11.95. Attorney's fee waived.

Judgment and labor lien decreed C. H. Boedecker in the amount of $5.95. The fee for filing the lien, 50 cents, allowed. Attorney's fee waived.

Judgment and lien for material furnished will be decreed the City Lumber Agency for $708.54. Attorney's fee, $125.

Judgment and lien for material furnished by the St. Paul & Tacoma Lumber Company will be decreed in the amount of $708.33. Attorney's fee, $125, allowed.

Judgment and lien for material furnished will be decreed Hunt & Mottet in the sum of $462.25. Of this amount, $111.75 represents material, for which E. E. Davis & Co., contractors, were primarily liable. Therefore the payment in full of Hunt & Mottet's bill will reduce the amount hereafter allowed Davis & Co. by $111.75. Attorney's fee of $100 allowed.

Judgment and materialman's lien will be decreed Savage-Scofield Company for $9,342.25. Attorney's fee, $350, allowed.

Judgment and lien for material will be decreed the Henry Mohr Hardware Company in the amount of $36.84. An attorney's fee of $25 is allowed.

Judgment and materialman's lien will be decreed the Far West Clay Company for $22,165.34. Attorney's fee, $2,500, allowed.

Judgment and lien for material will be decreed the P. & G. Lumber Company for $40.80. Attorney's fee allowed, $25.

The Colby Star Iron Works will be allowed to amend its lien and complaint, and judgment and lien for material will be decreed in the amount of $1,770.12. Attorney's fee will be allowed in the amount of $175.

Crane & Co. ask a lien on account of certain water-closet fixtures. This is disallowed, because of reasons already stated. It has been urged on behalf of Crane & Co. that the rule should not be applied, because one part of each set of fixtures, which part was in the evidence called a "Hulbert fitting," had been delivered and installed in the partly constructed building. The court will not pause to inquire whether there may not be cases where the above rule should be relaxed, or an exception made to it, particularly if the part of the fixture not delivered were worthless, or greatly diminished in value, if it lacked the part installed, as the part delivered of such an article would contain certain elements of notice to others interested in the work upon the property; but such is not this case. The Hulbert fitting is, substantially, in the class of a stock fitting, which, when furnished, these undelivered water-closets will again be made complete. The estimate upon which Olson Company was paid a percentage shows that there is no difficulty in arriving at the value of a Hulbert fitting, apart from the assembled water-closet. Crane & Co., while an entire contract, will have no lien for the portion not delivered. The Hulbert fittings were delivered and will be allowed at the price billed, $20 each, and the one water-closet delivered at $51.15.

Crane & Co. are decreed a lien as a materialman for the following items and amounts:

| Quantity. | Size. | Description. | Price. | Total. | |
|---|---|---|---|---|---|
| 1241–5 | ½" | Blk. Gen. W. I. Pipe | $ 6 92 | $ 85.91 | |
| 1842–10 | 1¼ | " | 17.58 | 323 97 | |
| 1350–0 | 1½ | " | 21.02 | 283.77 | |
| 764–0 | 2½ | " | 47.00 | 359.08 | |
| 64–1 | 3½ | " | 74.11 | 47.49 | |
| 125–10 | 5 | " | 118.95 | 149.67 | |
| 134–3 | 6 | " | 154.24 | 207.07 | |
| 255–10 | 8 | " | 208.16 | 532.54 | |
| 2076–10 | ¾ | " | 10 59 | 219.94 | |
| 1463–1 | 1¼ | " | 20.17 | 295.10 | |
| 3325–6 | 1½ | " | 25.31 | 841.68 | |
| 1182–8 | 2½ | " | 54.41 | 643.49 | |
| 148–2 | 3½ | " | 85.56 | 126.77 | |
| 768–7 | 6 | " | 178.58 | 1,372.53 | $ 5,489.01 |
| 1 | 4" | #1028 Galv. Drg. Y | $ 6.75 | | 5.40 |
| 2769–7 | ¾" | Blk. Genuine W. I. Pipe | $ 8.80 | $ 243.72 | |
| 2588–2 | 1 | " | 13 00 | 336.46 | |
| 1208–5 | 2 | " | 30.45 | 367.96 | 948.14 |
| 832–7 | 3" | " | 61.96 | 515.87 | |
| 202–11 | 4 | " | 87.58 | 177.72 | |
| 56–11 | 10 | " | 226.48 | 128.91 | |
| 2587–6 | ½ | Galv. Gen. W. I. Pipe | 8.62 | 223.04 | |
| 1340–8 | 1 | " | 15.65 | 209.81 | |
| 1453–4 | 2 | " | 35.50 | 515.93 | |
| 2806–11 | 3 | " | 71.65 | 2,011.16 | 3,782.44 |
| 1 | 3x1¼ | Galv. Mall. Tee | $ 7.60 | | |
| 1 | 3x2 | " | 7.60 | $ 6.08 | |
| 2 | 3x2 | Face Bushings | .70 | 1.33 | 7.41 |

Carried forward ..................................................... $10,232.40

Brought forward ........................................... $10,232.40

| Quantity. | Size. | | Description. | | Price. | Total. |
|---|---|---|---|---|---|---|
| 1 | 6 | No. 1020 | Galv. Dr. Fit. | | $ 16.50 | $    16.50 |
| 39 | 6x4 | 1021 | " | | 18.50 | 721.50 |
| 6 | 6 | 1028 | " | | 18.50 | 111.00 |
| 2 | 6 | 1001 | " | | 13.15 | 26.30 |
| 1 | 6 | 1003 | " | | 11.00 | 11.00 |
| 8 | 4x1½ | 1029 | " | | 7.40 | 59.20 |
| 2 | 4x3 | 1029 | " | | 7.40 | 14.80 |
| 10 | 4x4 | 1028 | " | | 6.75 | 67.50 |
| 4 | 4x4 | 1020 | " | | 6.15 | 24.60 |
| 87 | 3x1½ | 1029 | " | | 5.10 | 443.70 |
| 4 | 3 | 1028 | " | | 4.65 | 18.60 |
| 1 | 3 | 1001 | " | | 3.10 | 3.10 |
| 3 | 3 | 1003 | " | | 2.55 | 7.65 |
| 39 | 2½x1½ | 1029 | " | | 4.00 | 156.00 |
| 3 | 2½ | 1028 | " | | 3.70 | 11.10 |
| 6 | 2 | 1024 | " | | 2.30 | 13.80 |
| 18 | 2 | 1020 | " | | 1.50 | 27.00 |
| 35 | 2 | 1059 | " | | 3.50 | 122.50 |
| 20 | 2 | 1001 | | | 1.15 | 23.00 |
| 30 | 2 | 1003 | " | | 1.00 | 30.00 |
| 120 | 1½ | 1024 | " | | 1.50 | 180.00 |
| 100 | 1½ | 1020 | " | | 1.00 | 100.00 |
| 10 | 1½ | 1057 | " | | | |
| 50 | 1½ | 1058 | " | | .70 | 42.00 |
| 250 | 1½ | 1003 | " | | .67 | 167.50 |
| 50 | 1½ | 1001 | | | .72 | 36.00 |

|  | | 38–5% | | | $2,434.35 | $ 1,433.83 |
|---|---|---|---|---|---|---|
| 86 Hulbert fittings at $20.00................................ | | | | | | 1,720.00 |
| 1 Complete water closet.................................. | | | | | | 51.15 |
| 6 | | 4" Clo | Galv. Nipples..............$ | 1.35 | $    5.67 | |
| 2 | 2 | 1005 | Galv. Drg. Fit........ | 1.00 | 1.60 | 7.27 |
| 3 | 4 | 1003 | Galv. Drg. 45 Deg. Ells..$ | 4.00 | | |
| 5 | 3 | 1003 | " | 2.55 | $   19.80 | |
| 25 | 1½ | | Galv. Mall. Locknuts........ | .52 | 5.34 | 25.14 |
| 1 Pc | 6 | | Nat. FW Galv. Pipe 2¾"... | 266.00 | $    .61 | |
| 2 | 6 | | Threads ................. | 1.05 | 2.10 | 2.71 |
| 3 | 6 | | 1003 Galv. Dr. Fittings.....$ | 11.00 | $   33.00 | |
| 1 | 6 | 1001 | " | 13.15 | 13.15 | 36.92 |
|  | | 20 | | | | |
| 1 | 6x4 | | Blk. Bushing..............$ | 1.25 | | 1.00 |
| 2 | 6 | | Threads (on own pipe)..... | 1.05 | | 2.10 |
| 3 Pcs | 6 | | Galv. Pipe O' 3½"........ | 227.00 | $    2.00 | |
| 6 | 6 | | Threads ................. | 1.05 | 6.30 | 8.30 |
| 4 | 6x4 | | No. 1021 Galv. Dr. Tees..... | | | |
|  | | 35 | | $ 18.50 | $   74.50 | $   48.10 |
| 2 | 6 | | 1000 Galv. Dr. Elbows.. | 11.00 | $   22.00 | |
| 2 | 6 | | 1003 " 45 Deg. Elbows | 11.00 | $   22.00 | |
|  | | 35 Per Cent. | | | $   44.00 | 28.60 |
| 2411–11 | 4" | | Galv. Gen. W. I. Pipe.....$101.39 | | | 2,445.45 |
| 1 | 6x3 | | Blk. Bushing ............$ | 1.25 | 5 per cent. | 1.19 |
| 1 Pc | 6 | | Galv. Pipe O' 3½" TBE.... | $266.00 | $    .77 | |
| 2 | 6 | | Threads ................. | 1.05 | 2.10 | 2.87 |
|  | | | | | | $16,047.03 |

Attorney's fee allowed, $2,000.

The Washington Brick, Lime & Sewer Pipe Company makes a claim for a lien upon the ground that, although the material prepared by it was not delivered at the premises, the material was specially prepared for this building and is of very little worth for any other purpose. The lien is denied, upon the authority of Holly-Mason Hdwe. Co. v. National Surety Co. et al., 107 Wash. 74, 180 Pac. 901, and other cases cited.

It is contended that a lien should be allowed for that part of the material shipped from Spokane to Tacoma and stored in the railroad yards at Tacoma. Under the foregoing authority, the lien will have to be denied, even though it was shown that the owner had requested the shipment to Tacoma. The court, however, finds that the shipment was made by claimant, rather to avoid the higher freight rates imminent, than to accommodate the building company, although it may have been in part for the latter purpose, and that it never passed to the possession and control of the building company.

The contention on the part of the defendant building company that a part of the tile shipped was discolored is not established. Further evidence will have to be taken to establish the amount of the judgment to which this claimant is entitled, as a satisfactory finding cannot be made upon the evidence already taken as to claimant's damages, due to defendant's breach. The attorney's fee being an incident of the lien, the claimant will only recover the statutory attorney's fee of $15.

McClintic-Marshall Company, a Pennsylvania corporation, asserts a lien for structural steel. The value of the steel is alleged to have been $263,437.54; a payment of $86,805.17 is admitted, and $176,632.-37, with interest claimed. Defendant admits a value of $260,000, alleges payment of $87,814.34, and claims an offset because of defective fabrication for the amount of $3,000, further damage of $14,052.76 on account of delays in delivery, because of freight charges increased pending delivery, and $50,000, because of claimed loss of rentals and interest. The defendant further asserts that the suit cannot be maintained, because of an arbitration clause in the contract. Defendant denies the jurisdiction of the court on account of liens asserted by interveners, where the amount is less than $3,000.

The court has heretofore upheld the jurisdiction of the court, and found the arbitration provision inapplicable, and that defendant, under the terms of the contract, has no right of offset because of loss of rent and interest alleged to have been caused by delays in delivery. Under the evidence, I conclude that the delays were occasioned by defendant's failure to furnish details and drawings promptly, and that no offset is allowed because of increase in freight charges. The court finds no evidence of damage to defendant because of defects in fabrication, in excess of that conceded by complainant, to wit, $2,000. The right to a materialman's lien is established. Attorneys' fee allowed, $12,500.

Judgment will be decreed the Ajax Electric Company for $203.70 of which a contractor's lien will be decreed them in the amount of $153.09. Attorney's fee allowed, $40.

Judgment and contractor's lien will be decreed Mullins Bros. for $319.08. An attorney's fee is allowed them of $30.

The H. C. Green Iron Works asserts a labor lien for $1,395.62, a materialman's lien for $4,429.68, and admits a credit of $920.62, leaving a balance due of $4,904.68. The court has experienced considerable difficulty in settling the issues upon this claim. The defendant denies the reasonable and agreed value of the labor performed in excess of $1,000, and denies the reasonable and agreed value of the material furnished in excess of $4,000. If these denials as made were treated as admissions of the value up to the amounts mentioned, binding upon the court, the issue would be much simplified; but, in view of the stipulation on the trial that all claims must be proven, this cannot be done. At the trial, upon the receiver's admissions, the lien and pleadings were considered as amended to state a claim in the amount of $4,656.88.

It is held that this claimant did not forfeit a right to lien because of making an excessive claim. The first contract—a written contract—was for elevator cells and furnishings and window toggles. A later oral contract was entered into for furnishing and installing a flag pole for $1,500. The pole was furnished, but not installed. $750 is allowed for this flag pole, and the lien therefor will take rank as a contractor's lien. Under the written contract, claimant was to furnish and install all material covered thereby, except the window toggles. It was to furnish these, but was not required to install them. The billed value of these toggles amounted to $437.50, of which 75 per cent. has been paid, leaving a balance due of $109.35, for which claimant is entitled to a lien with the rank of a materialman's lien. Other material was delivered under this contract to the amount of $789.50, 75 per cent of which was paid, leaving a balance due of $197.38, for which claimant is entitled to a lien with the rank of a contractor. The total personal judgment to which claimant is entitled, including the lien items above mentioned, is $4,656.88. Attorney's fee of $150 will be allowed.

There are certain features relating to the claim of E. E. Davis & Co. which require special consideration. That company had a contract for the erection of the steel, which was almost completely performed at the time of the termination of the building operations. Upon the failure of the bank and building company, Davis & Co. were notified by the representative of the building company, Mr. Wells, who was the superintendent in charge of operations, to stop work. Davis & Co. contend that this effected a rescission of the contract. They sue upon the quantum meruit for what they had done. Claimant contends that this works two important changes in what would otherwise result: That rescission destroyed the reason of the lien waiver provision in the contract. Having already held that the lien waiver would not be enforced for other reasons, it is not necessary to consider what effect, if any, such rescission had upon the waiver provision.

Davis & Co. appear further to assert that, as their contract was for the erection of the steel, which was almost entirely accomplished by laborers employed and paid by them, they, to the extent of their pay roll expenditures, are entitled to be ranked as lienors for labor, rather than contractor lienors. They appear further to contend that the rescission and their claim to have their pay roll expenditures so ranked are in some way strengthened or advanced by reason of the rescission

and their suit on the quantum meruit. Whatever effect the rescission may have had upon the rights and liabilities of Davis & Co. and the building company, as between themselves, it is not perceived how it can in any way affect the equities as between Davis & Co. and other lien claimants. No part of this claim should rank as other than that of a contractor.

Judgment and contractor's lien will be decreed in the amount of $30,-343.69, less the $495.90, when paid, already decreed the Puget Sound Iron & Steel Works for straightening certain iron or steel entering into the building, which was bent by the falling of a load caused by the breaking of a sling provided by this claimant, which latter is herein ranked as a materialman's lien, and also. less the item, when paid, already allowed herein as part of the Hunt & Mottet lien. An attorney's fee of $3,500 is allowed.

[4] Under the authority of Western Hdwe. & Metal Co. v. Maryland Casualty Co., 105 Wash. 54, 180 Pac. 901, the Tacoma Millwork Supply Company seeks to establish a lien for certain material specially prepared and other material partly prepared for the building, but not delivered upon the building site, but still held in their own plant. This company had two contracts, which may be briefly described: One to provide material at certain prices; the other to install or place it in the building at a certain price.

Certain features connected with this claim require special consideration. The court holds that this claimant did not forfeit the right to its lien by claiming an excessive amount, and that neither the fact of examination and approval of the material by Wells, Webber & Drury at the factory, nor that the material was of a character, the delivery of which at the site before time for installation would have greatly damaged it, nor the further fact that certain of the material was primed and painted in claimant's factory or warehouse by another contractor, changes the rule, already announced herein, for there is nothing in the statute to show an intent to make any exception as to what would constitute furnishing or delivery. The court further holds that the question of delivery, involved under this claim, is not affected by this claimant's delivering the key of the warehouse where the material was stored to the receiver after his appointment. Claimant's counsel has argued:

"The contract itself says that the material shall be taken off the hands of the mill company as rapidly as manufactured. The owner to provide dry storage space. This appears in the proposals attached to the contract. The testimony further goes to show that in talking with Webber, who was in full charge of operations, it was found around October, November, and December that the building was not far enough along to take into the various parts mentioned; that it was then arranged that the mill company would get some dry storage space, the rentals to be adjusted by Webber at the conclusion of the contract, and would store whatever it could for the company at its own warehouse at the plant; that payments were made both on that stored in the warehouse and that stored at the plant as well, and, of course, upon those frames stored and delivered into the building; that Wells several times came to the warehouse and the factory, and accepted all of the material mentioned; that several times R. T. Davis urged Wells and Webber to take this material off their hands and put it on the building; that Wells particularly, as late as the first two days in January, told Davis that he would have to

hold it for them, that they had no place in the building, and that it would be damaged."

While the conduct above described would amount to a recognition of liability by defendant, because of delays and inability to receive the material at the building being constructed, it doe's not amount to, or take the place of, requisite delivery or furnishing material contemplated in the lien statute. Delivering or furnishing the material at the building and the work done upon it not only affords the other potential lienors knowledge of the enhanced value of the property by reason thereof, but affords notice to them and warning of what is being placed against the property by way of other charges or liens—a warning and notice not afforded by the storage or acceptance of material elsewhere. The court holds that the contract provision for a $50 penalty for delay in performance does not affect the question of a right to or want of lien in this case, for not delivering the material, and it is further held that nothing in the nature of a purchase-money lien would be created as long as the seller retained possession of the material, for, as long as he did so, he would not need it. Hunter v. Blanchard, 18 Ill. 318, 68 Am. Dec. 547.

Under the $30,000 erection contract, claimant's testimony was that the actual work done amounted to $6,043. The work going to make up this item is described in the testimony as follows:

"Q. If you had been furnishing sash, for instance, on that building, and it did not fit, you would be billed back for the additional cost, wouldn't you, for making it fit? A. I am not speaking of the fit of the sash. I am speaking of the additional work that would ordinarily be done on the building, such as trimming off the stiles of the sash, and also trimming off the bottoms of the stiles, and seeing that those fit in there without any much further work. Ordinarily there will be considerable work on the building, taking these sash as they were often delivered, fitting them into these frames. Then again we built up the window casings, we mitered them together and glued them up, and also the door casings, so that we would save ourselves that expense on the building and facilitate the work.

"Q. What did that $65,000 contract cover? A. That covered just the furnishing of the bare materials."

While the window casings or frames mentioned in this testimony were delivered, the sash mentioned were not delivered. Both were called for by the contract for material. As long as the value of such work on the sash is not segregated from that work on the frames, the entire item will be disallowed, as not lienable under the proof. An item of profit under this contract, asserted as lienable, is also denied.

Under the contract for material upon 831 window frame openings manufactured by this claimant, billed at $8,310, there was paid $6,232.-50. The evidence shows that of these 691 were actually delivered, and payments made should be applied pro rata upon those delivered and those undelivered. While the various sizes of these frames may afford evidence of some difference in value, yet, by reason of the fact that the work of fashioning the frames far exceeds the value of the material in the frame, together with the further fact that 680 of these frames were billed or estimated at $6,800, and 151 of them were billed or estimated at $1,510, convinces the court that a fair valuation on the

691 frames and openings delivered would be $6,910. Prorating the total payment, $6,232.50 shows a payment of $7.50 upon each frame or opening, leaving unpaid on each $2.50, or a total upon those delivered (691) of $1,727.50, for which this claimant is entitled to a materialman's lien. Nothing will be added thereto by way of profit claimed. Attorney's fee fixed at $350.

A personal judgment under the first contract, in the amount of $6,043, will be allowed. There is testimony that, under the material contract, the material was 90 per cent. complete. There is other testimony that 100 per cent. of the material was furnished and 40 per cent. of the work done on it; but I am unable to reach a satisfactory conclusion under the testimony upon the question of the amount for which claimant is entitled to a personal judgment. The question will be settled after argument upon settling of the decree.

Ben Olson Company asserts a lien for $49,686.10. It will be necessary to hear further argument in order to determine the exact amount for which that company is entitled to recover a personal judgment, as I have been unable to reconcile the various figures and statements. No part of this company's claim would be entitled to be given the status of a laborer's lien. A contractor furnishing labor and material, or material, should not, by reason of that fact, be changed from the status of a contractor to that of a materialman, or labor lien claimant.

The following have been established as offsets or deductions to the lien items claimed: Paid by defendant to Olson Company,. $12,470.11. After suit was started, Olson Company was allowed to withdraw certain material already delivered by it to the building site. As between the lien claimants, equity requires that these payments be applied on lien items not so recovered. Olson Company will only be allowed for one water-closet installed and $20 for each Hulbert fitting, with 15 per cent. profit thereon as a reasonable allowance to be added to the $20 for advance of the jobber or retailer over and above the wholesale price established by Crane & Co.

All, or substantially all of the Crane & Co. lien overlaps that of Olson Company. A deduction must be made from the latter upon this account. The question remains as to the amount of the deduction. While not entirely clear, I find that the preponderance of the evidence shows the overlap to be complete. On account of the application of payments made to Crane & Co. by Olson Company, it results that no part of the allowable lien items of Olson Company, supplied by Crane & Co. has been paid for by the former company, yet they are charged by Olson Company to the defendant at 50 per cent. advance over the price charged and liened by Crane & Co. . Such a charge for goods, payment for which has not been made, is unconscionable, at least so far as other lien claimants are concerned.

Olson Company took the contract for $91,000, $1,000 representing the agreed value of old radiators, of which $8,000 has been figured as an allowable profit. What would constitute a reasonable profit is not capable of exact determination. A certain amount of latitude must be allowed on such a question. Taking the foregoing as an admission as to what would constitute a reasonable profit, I conclude that any profit

in excess of 15 per cent. to be allowed Olson Company for material supplied by Crane & Co. and held lienable would be unreasonable and extortionate. It will be further noted that, because of the default of the defendant and Olson Company in not paying Crane & Co., the latter have brought suit, and an attorney's fee has been allowed them in the amount of $2,000. As between Olson Company and the other lien claimants, that is an item that should be applied in reduction of Olson Company's lien items established, or at least postponed until the allowed liens of other claimants have been paid. On account of the evidence of extravagant charges for material afforded by the foregoing, I hold that no profit should be allowed or added to the items as charged by this claimant. No lien being established, no attorney's fee will be allowed, other than the statutory fee of $15. The amount of the foregoing deductions exceeds the value of all material delivered by Olson Company not removed.

Judgment and contractor's lien will be decreed the Otis Elevator Company for $642.45. Attorney's fee allowed, $125.

The Edward Miller Cornice & Roofing Company seeks a recovery in the total amount of $5,599.10, and to establish a lien under two contracts, one for furnishing certain windows, and the other for furnishing and installing roofing and sheet metal. The company also seeks to establish a lien for $16.10 for material which was furnished and $43 for labor. As to these last two items, $16.10 is allowed as a materialman's lien, and the $43 is allowed as a contractor's lien.

While there are certain general expressions in the first of these two contracts mentioned that, alone considered, might justify the ranking of the claims under such first contract as a contractor's lien, yet, under the particular provisions of the contract, I find that material actually furnished thereunder would entitle claimant to have his lien ranked as a materialman's; but there was no material actually furnished or delivered at defendant's building under the first contract, although a material amount was secured and partly prepared at complainant's shop. The second contract provided for the payment of a lump sum for material and the installation of it. Therefore any claim established under it must be ranked as a contractor's lien. Under the second contract, work and material entered into the building in the amount of $1,080, on which $810 was paid, leaving a balance of $270, for which claimant is entitled to a lien ranked as a contractor's lien. On account of damage incurred upon sundry items, claimant is entitled to a further judgment of $1,600, made up as follows:

On account of difference in the price of roofing secured.............$  150 00
Same, account of copper...................................................   200 00
Same, account of skylight glass...........................................    50 00
Same, account of window glass............................................   600 00
Same, account of galvanized iron.........................................   600.00
                                                                          ----------
                                                                          $1,600.00

Attorney's fee, $175, allowed.

Mr. Haskell was appointed receiver of the bank by the state court, and thereafter as receiver of the defendant building company herein by this court. The appointment by this court was made upon the as-

surance of the receiver that, if appointed, he would charge no fee as receiver herein. As receiver of the bank, his counsel, appointed herein upon his request, was already employed by him in the receivership in the state court. No authority to employ counsel was asked of this court, nor request made to fix the compensation of counsel. Nor was the question of compensation, other than stated above, called to the court's attention, although authority at the time of the appointment of the receiver was asked and given to employ caretakers and assistants to protect the property during the receivership. Under these circumstances, the court finds that the understanding that there would be no fees asked or allowed the receiver contemplated the services of his counsel as well. No fees will be allowed the receiver's attorney.